[Civ. No. 1269.    First Appellate District.—June 16, 1913.]

WILLIAM GLASSPOOLE, Respondent, v. THE PACIFIC
LUMBER CO. (a Corporation), Appellant.

MASTER AND SERVANT—INJURY TO SWITCHMAN—LOCOMOTIVE CRANE
CREW AT SAWMILL.—Where an inexperienced switchman of a crew
of men, operating at a sawmill a locomotive crane for handling
timber, has his hand injured while riding on the coupling bar at the
blind end of the car as it is being run through the yards of the
lumber company employing him, his right to recover from the em-
ployer is a question for the jury; where he was riding, as was the
custom, on the coupling pin to watch for obstructions on the track
and to set switches, and his hand was injured by the engineer's
operation of the crane, which was in a defective condition.

ID.—WARNING TO EMPLOYEE—EVIDENCE—CROSS-EXAMINATION.—Where
there was evidence on the direct examination of a witness tending
to justify the plaintiff in riding on the coupling bar it is proper
cross-examination to ask the witness whether he had warned the
plaintiff that such position was a dangerous place to ride.

ID.—WARNING OF DANGER—EVIDENCE.—If the plaintiff alleges that the
defendant was negligent in not warning him of the danger, and the
defendant specially pleads the defense of contributory negligence,
evidence that another employee warned the plaintiff against riding
on the coupling bar is admissible.

ID.—INSTRUCTIONS—OBJECTIONS RAISED FOR FIRST TIME ON APPEAL.—
Objections to certain instructions raised for the first time by the
appellant in his brief, the respondent having had no opportunity
to be heard on the questions, will not be considered by the appellate
court.

APPEAL from a judgment of the Superior Court of
Humboldt County and from an order refusing a new trial.
Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

C. M. Wheeler, E. W. Wilson, and Bernard Silverstein,
for Appellant.

Coonan & Kehoe, and Clarence Coonan, for Respondent.

HALL, J.—Plaintiff recovered judgment upon a verdict in
his favor in an action for damages for the loss of the fingers

of one hand, alleged to have occurred through the negligence of defendant. Defendant moved for a new trial, which being denied, it appealed from the order and the judgment.

Defendant was engaged in operating a sawmill for the purpose of manufacturing lumber from logs of timber, and in connection therewith operated and maintained a railway, with switches, locomotives, cars, and the necessary equipment therefor. Among other things it operated what is designated as a locomotive crane. This consisted of an apparatus, composed of what was practically an ordinary flat car upon which was mounted a movable crane used for lifting logs and other heavy articles. The crane was attached to and connected with a revolving turret and cab, which were so constructed that the entire superstructure, that is, the crane, turret, and cab, could be made to revolve by machinery in the turret, so that the crane could be made to point in any direction. The crew of the locomotive crane consisted of an engineer, a fireman, and two men upon the ground. The duty of the men upon the ground was primarily to fasten and unfasten the hooks of the crane to and from the articles to be moved, but also the evidence supports the conclusion that when the apparatus was being moved along the tracks as occasion required their duty was to act as brakemen and switchmen. The end of the cab from which the crane projected was fitted with a window or opening, through which the engineer could observe the track, but from the opposite end there was no means by which the engineer could observe or see the track. As a result, when the locomotive crane was being moved in the opposite direction from that in which the crane pointed it was necessary for one, at least, of the switchmen to look out for obstructions upon the track and the condition of the switches.

No place was provided upon what we may designate as the blind end of the locomotive for such switchman or look-out to ride, but there was upon such end a draw-head to which a coupling bar could be attached and fastened with a coupling pin. It had been and was the practice and custom of the switchmen when engaged in looking out for obstructions along the track and attending to the setting of the switches to ride upon this coupling bar, although it was manifestly not intended for any such purpose. The end of the revolving

cab opposite to the crane extended to within five inches of the end of the floor of the flat car, and was weighted with a counter-weight to the crane, which passed over and very close to the floor of the flat car when the superstructure was revolved. At the time of the injury to plaintiff and for several weeks prior thereto the machinery that operated and controlled the revolving of the crane and superstructure was worn and out of order, so that the crane shifted from side to side, and could not be readily stopped by the brake at any given point. Upon the occasion of the injury to plaintiff the locomotive crane was being moved along a track in the yards of defendant, in the direction opposite to that in which the crane pointed. Plaintiff, in order, as he claimed, to watch for obstructions and to be able to set switches, took his seat upon the coupling bar. Because of a jolting, caused by the roughness of the track, he placed his hand upon the floor of the flat car at the end thereof to steady himself. While his hand was in this position the engineer operated the turret for the purpose of pointing the crane down the center of the track, where it ought to point and from which position it had shifted because of the defective condition of the machinery. By reason of the same defects it could not be stopped at the proper point, but passed beyond, and as a result the counter-weight swept across plaintiff's fingers and cut them off.

It is contended by appellant that the evidence does not support the verdict. 'This contention is based principally upon the theory that plaintiff's injury was caused through his own fault and while he was in a place where he ought not to have been, and where the proper discharge of his duties did not require him to be.

We think, however, that the case made was a proper one for the jury.

The complaint is in two counts, one charging negligence against defendant because of the unsafe condition of the machinery, and one charging negligence in putting plaintiff, an inexperienced person, to work without giving him proper instructions in regard to the danger to be apprehended and avoided in the doing of the work.

Under this latter count, if not the other, we think the verdict may be sustained. The evidence shows that plaintiff had been for some time engaged in pulling rigging in the log

pond of defendant, and without any prior experience in the duties of a switchman or other workman about a locomotive crane, had been assigned to work as a workman and switchman upon the locomotive crane three days before the accident. He had no knowledge at all of the defects in the machinery of the locomotive crane; and though he was given instructions how to avoid injury when hooking and unhooking articles to and from the crane, the evidence admitted shows that no instructions whatever were given as to where he should ride when the crane was being moved along the track, or whether he should or should not ride, or that there was any danger to be apprehended from riding upon the coupling bar. The evidence further showed that it was and had been the habit and custom of his working mate, and whose duties were the same as his, to ride upon such coupling bar when the locomotive crane was being backed along the track, and that plaintiff before the accident had seen his said working mate so riding. The circumstances in evidence were such as to justify the inference that the managing officers of the defendant were all aware of this habit and custom, before and when plaintiff was assigned to his position on the locomotive crane; and, as we have before stated, they had full knowledge of the defective condition of the operating machinery of the crane and its adjuncts.

Under these circumstances we think that the jury may well have believed that the defendant was derelict and negligent in its duty to plaintiff, an inexperienced person and without knowledge of these special defects and dangers, in not instructing and informing plaintiff of such dangers.

As before stated, the evidence admitted discloses that plaintiff, was not informed of any special or any danger to be apprehended from riding on the coupling bar.

But as a matter of fact defendant made two efforts to place before the jury such evidence, but upon the objection of plaintiff was prevented from so doing by the rulings of the court sustaining such objections.

The evidence in the case was read from the testimony of witnesses given upon a former trial, including the deposition, taken before a notary, of one George M. Duncan, the working mate of plaintiff about the locomotive crane. Upon direct examination he had testified that he had usually and frequently

ridden upon the coupling bar in question, and had frequently so ridden when passing the offices of the company, where the principal officers of the defendant could have seen him, and that plaintiff had seen him so riding before the accident.

Upon cross-examination defendant attempted to read from the deposition of this witness certain questions and answers given upon cross-examination when the deposition was taken, as follows, to wit:

"Q. Did you or did you not warn Glasspoole against riding on that bar?

"A. Yes sir, on one occasion I did. I wanted Glasspoole not to get on there.

"Q. Did you tell him why?

"A. Yes sir. I told him it was a pretty dangerous position for him to get into, and he was liable to get hurt.

"Q. Did you tell him it was no place to ride—it wasn't a place to ride?

"A. Yes sir.

"Q. So he understood it?

"A. Yes sir, we all understood it."

To each of these questions and answers the plaintiff objected as not cross-examination, and the objections were sustained.

We think these questions and the answers thereto were proper cross-examination. The evidence that we have above set forth as a portion of the direct evidence of the witness Duncan was intended to justify plaintiff in riding upon the coupling bar. Although there was abundant evidence that it was not necessary for him to ride there, and it is manifest that it was not intended as a place to ride, by a switchman or other workman, the argument from this direct evidence is that plaintiff, an inexperienced and uninstructed workman, was not guilty of negligence in so doing, but was justified in so following the example of an experienced man. The warning and statements of this same man that it was a dangerous and not a proper place for plaintiff to ride, had a direct bearing upon and distinctly rebutted the inferences to be drawn from the direct testimony of such witness. Such testimony is clearly proper testimony upon cross-examination. (*Estate of Purcell*, 164 Cal. 300, [128 Pac. 932]; *People* v. *Rozelle*, 78 Cal. 84, [20 Pac. 36]; *People* v. *Teshara*, 141 Cal. 633, [75 Pac. 338]; *Graham* v. *Larimer*, 83 Cal. 173, [23 Pac. 286];

*People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169] ; *People* v. *Gallagher,* 100 Cal. 466, [35 Pac. 80].)

So clearly was this proper cross-examination of the witness Duncan that we think the court erred in disallowing the evidence when offered as cross-examination ; but if it can be said that it was a matter of discretion with the trial court, the court certainly erred in rejecting and disallowing the same testimony when, after the close of plaintiff's case, defendant offered the same testimony as a part of its case. The evidence had a direct and important bearing upon the vital issues in the case. It bore upon the issue as to knowledge of plaintiff, and upon the specially pleaded defense of contributory negligence. The objection made by plaintiff to the evidence that at the taking of the deposition he had relied upon his conviction that such testimony would be rejected at the trial as not proper cross-examination, and had therefore refrained from fully questioning the witness upon redirect examination, is hardly tenable. As we have shown, he ought not to have relied upon such conviction, for the testimony should have been admitted as proper cross-examination; and further the deposition shows that he did quite fully question the witness upon redirect examination.

To sum up our discussion of this subject, it is clear that as a result of the rulings of the court rejecting this testimony, the defendant was deprived of the benefit of important evidence that had a direct bearing upon the vital issues to be determined by the jury. No other evidence to the same effect was available to defendant; and for this error the judgment and order should be reversed.

It is claimed that the court erred in sustaining some other objections to questions and answers offered by the defendant from the deposition of the witness Duncan, but such of the evidence thus rejected as seems important appears to have been covered by other evidence from the same witness. In appellant's reply brief it for the first time also raises some objections to certain instructions. Upon these questions respondent has had no opportunity to be heard, which is a sufficient reason for this court not to consider the points so made. (*Kahn* v. *Wilson,* 120 Cal. 643, [53 Pac. 24] ; *Phelps* v. *Mayers,* 126 Cal. 549, [58 Pac. 1048] ; *Webber* v. *Clarke,* 74

Cal. 11, [15 Pac. 431] ; *Maxwell* v. *Fresno City Ry. Co.,* 4 Cal. App. 745, [89 Pac. 367].)

The judgment and order are reversed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 15, 1913.