114 P.2d 776

**MONTGOMERY v. KARAVAS et al.**

**No. 4562.**

Supreme Court of New Mexico.

May 16, 1941.

Rehearing Denied June 9, 1941.

Kiker & Sanchez, and Anthony J. Albert, all of Santa Fe, for appellant.

Seth & Montgomery, of Santa Fe, and Floyd W. Beutler, of Taos, for appellees.

BRICE, Chief Justice.

This action was brought by appellant to recover a balance of $8,735.70 and to foreclose a lien securing it, alleged to be due him by appellees upon a contract for the construction of a hotel in the town of Taos, New Mexico.

The appellees denied liability in any amount, and by cross-action claimed an indebtedness due them by appellant upon the same contract, in the sum of $13,344.12.

The trial court entered judgment for appellant in the sum of $1,250.15, as the balance due him after deducting certain credits found to be due appellees on their cross-action. From this judgment both parties appealed.

The substance of the trial court's findings of fact is as follows:

On January 17, 1938, the parties hereto entered into a written contract, by the terms of which the appellant agreed to construct a hotel building in Taos, New Mexico (subject to additions or deductions), for the agreed price of $28,000.

The following are some of the provisions of the contract:

"The owners agree to make payments on account of the contract, as follows: 85% of the value of the materials wrought into the construction of the building, plus materials delivered on the job for use in said building, and in addition thereto 85% of the value of the labor performed thereon, in monthly installments, on or before the 10th day of each succeeding month, upon certificate of the architect, and, the remaining 15% of material and labor, including the balance due under the contract, within thirty days after completion of the building, and certification of completion by the architect. * * *

"All work performed and materials furnished under this contract shall be subject to the personal supervision and direction of the aforenamed architect (G. D. Gaastra) and shall be accepted by the owners only upon the complete approval of said architect. * * *

" * * * the architect shall, not later than the date when each payment falls due,

issue to the contractor a certificate for such amount as he decides to be properly due. * * *

"The architect may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary to protect the owner from loss on account of:

"(a) Defective work not remedied.

"(b) Claims filed or reasonable evidence indicating probable filing of claims.

"(c) Failure of the contractor to make payments properly to subcontractors or for material or labor.

"(d) A reasonable doubt that the contract can be completed for the balance then unpaid.

"(e) Damage to another contractor.

"When the above grounds are removed payment shall be made for amounts withheld because of them.

"Neither the final payment nor any part of the retained percentage shall become due until the contractor, if required, shall deliver to the owner a complete release of all liens arising out of this contract, or receipts in full in lieu thereof and, if required in either case, an affidavit that so far as he has knowledge or information the releases and receipts include all the labor and material for which a lien could be filed. * * * If any lien remain unsatisfied after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such a lien, including all costs and a reasonable attorney's fee. * * *

"The architect shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the contract documents and when in special instances he is authorized by the owner so to act, and in such instances he shall, upon request, show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary, to insure the proper execution of the contract.

"As the architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor with the contractor, but shall use his powers under the contract to enforce its faithful performance by both. * * *

"The architect shall, within a reasonable time, make decisions on all claims of the owner or contractor and on all other matters relating to the execution and progress of the work, or the interpretation of the contract documents.

"The architect's decisions, in matters relating to artistic effect, shall be final, if within the terms of the contract documents.

"Except as above or as otherwise expressly provided in the contract documents, all the architect's decisions are subject to arbitration.

"Unless stipulated, the contractor shall provide and pay for all materials, labor,

water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work.

"If the architect and owner deem it inexpedient to correct work injured, or done not in accordance with the contract, an equitable deduction from the contract price shall be made therefor. * * *

"If the contractor should neglect to prosecute the work properly or fail to perform any provision of this contract, the owner, after three days' written notice to the contractor may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the contractor, provided, however, that the architect shall approve such action and the amount charged to the contractor."

The appellant completed the building, together with extras and additions for which appellees had agreed to pay him $3,296.57, making the agreed consideration $31,296.57 for constructing the hotel with changes and additions. The trial court allowed appellees the following credits:

Cash payments on contract..... $22,042.07
Payments made for material by
 appellees ................. 1,230.93
Hardware furnished by appellees, used in the construction
 of the building............. 350.00
Material bill paid by appellees to
 Rio Grande Steel Co.......... 1,073.12
Material bill paid by appellee to
 T. Chas. Gaastra............ 3,179.05

Paid by appellees to Southwestern Accoustical Eng. Co...... 257.45
Allowance for defective tile construction .................... 441.80
Allowance for other defective
 construction ............... 1,580.00
 ─────────
 Total credits ............. $30,154.42

The parties do not question the correctness of the first two credits, totaling $23,273.

The appellant asserts that the trial court erred in allowing appellees the credit of $350 for hardware, and claims that he is entitled to $350 additional on that account.

The following are provisions of the contract, material to a decision of this issue:

"The contractor agrees to furnish all labor and materials for the erection and construction of units 1 and 2 of a hotel building at Taos, New Mexico, in accordance with plans and specifications prepared by T. Charles Gaastra, Architect, of Albuquerque, New Mexico, with additions and alterations as hereinafter described. * * *

"* * allowance for hardware, $350.00.

"Hardware. $350 shall be allowed *by the contractor* for finishing hardware, which will be *furnished by the owner*, but shall be affixed by the contractor. * * *"

The appellees furnished the hardware, and the trial court did not err in allowing them credit therefor.

The appellees paid accounts due by appellant, as follows: To Rio Grande Steel

Co., $1,973.12; to the architect, T. Charles Gaastra, $3,179.05; and to the Southwestern Accoustical Engineering Co., $257.45; for all of which the trial court gave appellees credit. These were accounts owing for material furnished to appellant by the respective companies mentioned, and which were used by him in the construction of the building, except as to interest, cost of filing liens to secure the three claims, and attorney's fees of $75 on the claim of the Rio Grande Steel Co. and $90.50 on the claim of the Southwestern Accoustical Engineering Co. Appellant agrees that credit should be allowed for the amount paid for material furnished and for filing liens, but contests the allowance of attorney's fees and interest.

The appellees refused to make further payments, except upon certificates of the architect; and the architect refused to issue certificates for payment of eighty-five per cent of the value of the labor performed and material used and bought in or for the construction of the building, as required by the contract; because, as he contends, there was "defective work not remedied," and claims outstanding, to secure which liens could be filed. The appellant asserts that the architect's refusal to issue certificates was "unreasonable and arbitrary;" that appellees were justly indebted to appellant in an amount far in excess of that required to pay the outstanding claims which were due under the terms of the contract, and to which he was justly entitled, and that such failure to pay resulted in the filing of liens and "permitted expense on account of the filing of mechanics' liens and interest to accrue thereon." The argument in appellant's brief-in-chief is not that the charge of attorney's fees and interest was unauthorized, but that it resulted from appellees' own wrongful acts, and therefore these items should be charged to appellees; that it was not necessary to withhold this money unless to protect appellees; that:

"Under the uncontradicted evidence in the record, the refusal and failure of the defendants to pay the outstanding bills for materials was the cause of this additional expense which accrued on said claims. * * *

"* * *. The attorneys' fees and costs that accrued in connection with the liens filed on said bills for materials were due solely to the action of the defendants in refusing to pay these claims when demanded so to do by the plaintiff. * * *"

No reference is made to the pages of the record in which this "uncontradicted evidence" appears, nor is any evidence cited in the brief to show that "the attorney's fees and costs that accrued" were due solely to the action of the appellees in refusing to pay the claims; assuming that appellees were compelled to pay them on the demand of appellant. No attempt was made to comply with Sec. 6 of Rule 15 of this Court, which is:

"Assertion of fact must be accompanied by references to the transcript showing a finding or proof of it. Otherwise the court may disregard the fact.

"A contention that a verdict judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript. Such a statement will be taken as complete unless the opposite party shall call attention in like manner to other evidence bearing upon the proposition."

But we have examined the record and find no reason to set aside the conclusion of the court that the architect's refusal to issue certificates was not unreasonable, and that the refusal of appellees to make payments in the absence of certificates was within their rights.

The contract provided "that the architect may withhold * * * any certificate to such extent as may be necessary to protect the owner from loss on account of: (a) Defective work not remedied, and (b) claims filed or reasonable evidence indicating probable filing of claims; (c) failure of the contractor to make payments properly to subcontractors, or for material or labor; (d) reasonable doubt that the contract can be completed for the balance unpaid." The court found that there was defective work not remedied, and that the contractor failed to make payments for material furnished. There was substantial evidence indicating that material men's liens would be filed against the property. Under the terms of the contract appellees were not required to pay appellant funds so that he could pay for his material. He was required to take care of his own material bills, and not necessarily out of the proceeds of the payments due by appellees.

When material bills had accumulated to the extent that there was a reasonable doubt as to whether the contract could be completed and prospective liens paid off with the unpaid balance of the contract price, the architect was authorized to withhold certificates and the appellees were within their rights to refuse payment in their absence.

The court's findings regarding unpaid material claims and defective construction were a sufficient basis for his conclusion that the architect's action in withholding certificates was not "unreasonable and arbitrary;" if in fact unreasonable and arbitrary acts of the architect were a sufficient defense; a question we need not decide, as we find no reason to disagree with the conclusion of the trial court. The appellant sued for more than $8,000 and the judgment awarded him was for $1,250.15. The margin was small, considering the amount involved. Under the circumstances it was the duty of appellant to release the liens, and the legitimate expense incurred in doing so should fall upon him and not upon appellees.

In appellant's reply brief it is asserted that under the facts of this case the allowance of attorney's fees to lien claimants was not authorized by the New Mexico statutes. But this question was not presented in his brief-in-chief. It was

there assumed by appellant that these charges were proper and legitimate, but should fall upon appellees. Under these circumstances the question cannot be effectively raised in the reply brief, Witter v. Bank of Milpitas, 204 Cal. 570, 269 P. 614; Scheer v. Trust Co. of St. Louis, 330 Mo. 149, 49 S.W.2d 135; and this rule should particularly apply when, as in this case, the appellees had no opportunity to be heard on the question. Glasspoole v. Pacific Lumber Co., 22 Cal.App. 338, 134 P. 349.

There was substantial evidence to support the findings of the court to the effect that the tile construction was defective and that it would cost $441.80 to remedy such defects; also that it would cost $1,580 to remedy other defective construction; including the stairway and 2,700 square feet of concrete floor.

It is asserted by appellant that the cost of remedying the defective stairway and flooring was not the proper measure of damages; that it is the difference between the value of the building as completed, and what its value would have been had it been constructed according to the contract.

The rule to be followed depends upon the character and extent of the defective construction. It is variously stated, as follows:

"(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

"(a) For defective or unfinished construction he can get judgment for either

"(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

"(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste. * * *" Restatement of the Law of Contracts, Sec. 346.

"Where the contractor fails to keep his agreement, the measure of the employer's damages, whether sought in an independent action or by recoupment or counterclaim, is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, and this will generally be shown by the cost of getting work done or completed by another person. If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed. * * *" 5 Williston on Contracts, Sec. 1362.

"The true measure of recovery is the sum stipulated in the agreement less the

damages sustained by the failure strictly to perform. For instance, where the defects are remediable without taking down and reconstructing any substantial portion of the building, the amount of deduction from the contract price to which the owner is entitled is the expense of making the work conform to contract requirements. However, where the defective material has become an inherent part of the building so that the defect cannot be remedied except by taking down and doing over some substantial portion of the work, involving such an expenditure that the contractor would be deprived of adequate compensation, the amount allowable to the owner is the amount which the building, by reason of the defect is worth less than it would have been if constructed in entire conformity to the contract." 9 A.J., "Building & Construction Contracts," Sec. 43.

See annotations in 23 A.L.R. 1435; 38 A.L.R. 1383, and 65 A.L.R. 1297.

The trial court found that it would take $375 "to repair the stairs," and $560 "to repair the concrete floor of the lobby and curio room." The parties, in their briefs, construe the finding to mean that it would cost the sums named to remove the stairway and floors, and reconstruct them according to specifications; and we will accept this construction.

The question is whether the removal and reconstruction of the stairway and floors would involve an unreasonable economic waste. Would it require the tearing out of a substantial portion of the building; was such remedy impractical under the circumstances?

As the trial court concluded that the measure of damages was the cost of reconstruction, he in effect answered these questions in the negative.

The written notice served upon appellant by the architect regarding defective construction contained the following: "You are hereby notified that unless defects and unfinished work at the hotel building for Karavas Brothers, as listed below, is completed by September 12th, 1938, the owner will have same done and the cost thereof charged to you. * * * Stair from lobby to mezzanine defective and unacceptable, stair walls splashed with plaster and covered with red powder. Lobby floor and curio room floor uneven in color and covered with red powder, red powder has been deposited on walls and finish both as to first floor and mezzanine. Patching of floor in lobby at the base line defective."

A portion of the defects were remedied, but among those not changed were the stairway and floors of the lobby and curio room.

The contract provided: "The contractor shall omit tile floors in the lobby and substitute therefor, four inch concrete floor on well tamped earth, which floor shall have one half inch topping with color as selected mixed in the topping, the topping to be marked off in squares of approximately twelve inches in each direction. The above specified topping shall be monolithic with the base."

No written specifications were furnished appellant for building the stairway. It was to be colored, and it is evident that he understood that the coloring should correspond to the lobby floor, as the coloring methods used were the same for each.

There was substantial evidence to establish the following: The floor was not level and the surface was pitted and uneven. The coloring was "trowelled in," the wet topping after it was laid, and penetrated only one-sixteenth to one-thirty-second of an inch. It should have been mixed in the one-half inch topping material before it was laid. The floor is spotted and unsightly, and the stairs are in the same condition. There is no remedy except by reconstruction, as the thin coloring cannot be removed, and it will wear off in time, from use. The guests of the hotel are largely tourists. The trial court concluded, no doubt, that the unsightly and unattractive appearance of the lobby and stairway was detrimental to the appellees' business, and that it would be good business and not an economic waste to reconstruct them.

As we understand the appellees' testimony, the floor and stairway are so defectively constructed that they are unfit for the purposes intended and must, under any circumstances, be removed. That they are separable and can be removed and rebuilt without injury to the building. The cost would be less than three percent of the contract price. We cannot say, as a matter of law, that there would be unreasonable economic waste, or that it would be unrea-sonable to charge appellant with this expense. The defective construction must be removed in any event and we know of no better method of arriving at the measure of damages. The rule has not been stated better than by Justice Cardozo in Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N.E. 889, 891, 23 A.L.R. 1429, as follows: "It is true that in most cases the cost of replacement is the measure. [Ibid.] The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value."

We cannot say as a matter of law that the cost will be grossly and unfairly out of proportion to the benefits.

The following authorities are of assistance: Stillwell & Bierce Mfg. Co. v. Phelps, 130 U.S. 520, 9 S.Ct. 601, 32 L.Ed. 1035; Lambert v. Jenkins, 112 Va. 376, 71 S.E. 718, Ann.Cas.1913B, 778 (defective floor); Norcross Bros. Co. v. Vose, 199 Mass. 81, 85 N.E. 468 (defective floors); Graves v. Allert & Fuess, 104 Tex. 614, 142 S.W. 869, 39 L.R.A.,N.S., 591 and note; Atkinson v. Jackson Bros., Tex.Com.App., 270 S.W. 848, 38 A.L.R. 1377, and note; Jefferson Hotel Co. v. Brumbaugh, 4 Cir., 168 F. 867; Foeller v. Heintz, 137 Wis. 169, 118 N.W. 543, 24 L.R.A.,N.S., 327, and note; Hammaker v. Schleigh, 157 Md. 652, 147 A. 790, 65 A.L.R. 1285; Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N.E. 889, 23 A.L.R. 1429, and note; Pence v.

Dennie, 41 Cal.App. 428, 182 P. 980; 9 A. J. "Building & Construction Contracts" Sec. 152; 28 R.C.L. "Work & Labor" Sec. 45.

The appellant excepts to Conclusion of Law number 2, which is as follows: "I conclude that the defendants are chargeable for the full amount of the tile contract, and that the total amount of the bill being $666.95, plus attorney's fees of $90.50, should have deducted therefrom the amount of of $257.45 paid in settlement of said account and attorney's fees, plus the sum of $441.80, which is the amount found to be necessary to make such tile installation acceptable to the architect, leaving a balance due on the same to the plaintiff of $58.20." He stated that the balance of $58.20 found to be due him by calculation, had not been credited to him in the final judgment.

The trial court erred in this conclusion, but not as appellant contends, as he was given credit for the $58.20.

 The item of $666.95, plus $90.50 attorney's fees, was a debt due by appellant to a sub-contractor which appellees compromised for $257.45 because of faulty construction by the creditor. Appellant was required by the court to make these defects good and was entitled to the benefit of the compromise. The result is that appellees were entitled to credit for $257.45 paid in settlement of said claim, which included attorney's fees; plus the sum of $441.80, instead of the credit of $58.20 allowed the appellant. The difference is

small, as will be seen from the calculation. The judgment should have been for the agreed contract price of $31,296.57, less credits of $30,154.42, making $1,142.15 instead of $1,250.15, a difference of $108.00, to which appellant was not entitled. He cannot complain, and the appellees have not, so that the finding of a balance due appellant of $1,250.15 will not be disturbed here.

 The appellant sued for reasonable attorney's fees for the foreclosure of the lien herein, claiming that he was entitled to $500. The trial court denied any attorney's fees. The applicable statute is as follows: "Any number of persons claiming liens may join in the same action, and when separate actions are commenced the court may consolidate them. The court may also allow, as part of the costs, the moneys paid for filing and recording the lien, and reasonable attorney's fees in the district and supreme courts." Sec. 82-213, N.M.Sts. 1929.

This statute is not mandatory, but leaves the matter of allowing attorney's fees, as well as the amount, to the discretion of the district court. Mitchell v. McCutcheon, 33 N.M. 78, 260 P. 1086. In the absence of an abuse of discretion the decision of the district court upon the amount of attorney's fees, and whether any shall be allowed, will not be disturbed by us. Attorney's fees should ordinarily be allowed, and an arbitrary refusal to allow them would be an abuse of discretion.

We are not informed why the trial court refused to allow attorney's fees, but it well may have concluded that there would have been no occasion for the filing of the lien had appellant complied with the terms of the contract; that it was appellant's fault, and not appellees', that brought about the condition requiring a foreclosure of the lien. The court did not abuse its discretion by the ruling.

It was alleged by the appellees that appellant had failed to place metal lath in the corners of closets and bathrooms, in violation of the terms of the contract, for which they claimed recoupment. Evidence was taken as to the cost of uncovering this work and supplying such metal lath, and it was found to be $421. But as the appellees had not uncovered the work it was impossible to decide whether such metal lath had or had not been placed in accordance with the provisions of the contract, and recoupment therefor was denied. The court refused to make an allowance therefor, and concluded as follows:

"I conclude that the defendants have failed to properly comply with the contract in connection with the opening of the covered portions of the building, namely the bathrooms and closets, so as to determine whether or not metal lath was placed in the corners, and that the item of $421 the plaintiff cannot be held responsible for to the defendants. * * *

"I conclude that as to the metal lath in the corners of the bathrooms and closets, that the conclusions herein are without prejudice to any further rights which the parties may have under the contract."

The decree contained the following: "That this judgment shall be without prejudice *to any further rights* which the parties may have under the contract involved in this litigation, as to the metal lath in the corners of the bathrooms and closets of the building erected by plaintiff as contractor for defendants upon said real estate."

Among the items for which appellees recouped for damage was the one in question. The issues on this item were tried and the court concluded that the appellees had failed to sustain the burden of proving that they were entitled to this credit. Upon his own motion, it appears, the court reserved to the appellees the right to re-try the issues in another proceeding. The case was not left open for further evidence or for a reconsideration of the question in the case on trial.

We know of no authority which authorized the trial court, after it had tried and decided the issue, to reserve to the losing party in the decree, on its own volition, the right to another trial of the same issues in an entirely different proceeding.

The appellees, so far as we are informed from the record, took no part in this transaction. Sec. 105-1403, N.M.Sts.1929, authorized the dismissal by plaintiff of his cause of action at any time before judgment has been rendered in causes tried to

the court, and this has been held to apply to cross-actions. Pershing v. Ward, 34 N.M. 298, 280 P. 254; Young v. Vail, 29 N.M. 324, 222 P. 912, 34 A.L.R. 980; Andrews v. French, 17 N.M. 615, 131 P. 996. But appellees made no attempt to dismiss their cross-action or any part of it; and, as all questions were fully litigated, the decision of the district court that the appellees were not entitled to recoupment of this item, was not subject to a retrial in another action.

The contract provided: "All work performed and materials furnished under this contract shall be subject to the personal supervision and direction of the afore-named architect and shall be accepted by the owners only upon the complete approval of said architect." And that the owners agreed to pay: " * * * the balance due under the contract, within thirty days after completion of the building, and certification of completion by the architect."

By cross-assignments it is contended that a certificate showing the construction of the building according to contract was essential to the right of the appellant to recover any amount.

We will not go into the status of the architect under the terms of the contract, as it is unnecessary to a decision of this case.

Appellant brought an action upon the theory that he was entitled to recover the whole amount of the balance due upon the contract. Appellees answered, denying the right to recover any amount, and then, by cross-action, claimed that they were *entitled to credits* on the contract price of the building, as follows: $2,885 for remedying defects in the construction of the building; $5,547 for damages for delay in construction; $4,562.12 for debts of appellant paid by them; and $350 for hardware furnished by them, making a total of $13,344.12, a larger amount than claimed by appellant. Appellees asked for judgment for this full amount. They state in their cross-complaint, regarding damages for delay: "That said amounts are properly deductible from any claim of the defendant against these defendants, on account of said contract or otherwise."

Also, regarding the $350 item: "That no such allowance appears to have been made and the defendants are entitled to an offset against any claim of said plaintiff in said amount."

Regarding the defective workmanship, it was said: "That defendants will be obliged to expend said amount to said purpose" (to remedy the defects).

The New Mexico statute regarding cross-complaints is as follows: "Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-

complaint. * * *" Sec. 105-405, N.M. Sts.1929.

In construing this statute, this court, through Mr. Justice Botts, stated in Young v. Vail, 29 N.M. 324, 222 P. 912, 914, 34 A.L.R. 980:

"* * * The practice under the Codes permitting cross-complaints is taken from the equity practice, and it was always the rule in equity that, as our statute provides, the matters set up by cross-bill must relate to, or be connected with, the matter set up in the original bill. In other words, the original bill and the cross-bill constitute but one suit. * * *

"What the situation would have been in this respect had the cross-defendant defaulted we need not decide, but, having seen that the matters covered by the cross-complaint could not be the subject-matter of a new and independent suit, but that they must be in and constitute a part of the main suit embraced within the original complaint, when the cross-defendant appeared, it appeared, not in a new suit, but in the suit instituted by the plaintiff. Having so appeared, it became a party to the suit to foreclose the mortgage, and, being a party, is bound by the judgment as to all matters which were, or might have been, litigated therein."

"A cross-bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts, in aid of the defense to the original bill, or to obtain full and complete relief to all parties, as to the matters charged in the original bill. It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original, independent suit. The cross-bill is auxiliary to the proceeding in the original suit, and a dependency upon it." Ayres v. Carver, 17 How. 591, 58 U.S. 591, 594, 15 L.Ed. 179.

Also see: Cross v. DeValle, 1 Wall. 5, 68 U.S. 5, 17 L.Ed. 515; McDowell v. Hunt Contracting Co., 133 Tenn. 437, 181 S.W. 680; Morse v. International Trust Co., 259 Mass. 295, 156 N.E. 443.

The appellees recognized that they were only entitled to credits for the items claimed to be due them in their cross-bill, but asserted they were in excess of the balance due on the contract. The object of the cross-bill is to either obtain a discovery of facts in aid of the defense, or to obtain full and complete relief to all parties as to the matters charged in the original bill. In this case it was an admission that if the credits to which they were entitled were not sufficient to affect the balance due appellant on the contract then appellant was entitled to judgment therefor.

The clear object of the cross-bill was to settle all controversies between the parties, growing out of the original claims of the

301

appellant. The trial court did not err in allowing appellant relief.

We have not found it necessary to mention each of appellant's thirty-eight alleged errors assigned (all separately presented), but all have been considered. Those not disposed of are held immaterial to a decision, or otherwise without merit.

The district court will be ordered to amend his decree by striking therefrom paragraph 6, as follows: "That this judgment shall be without prejudice to any further rights which the parties may have under the contract involved in this litigation, as to the metal lath in the corners of the bathrooms and closets of the building erected by plaintiff as contractor for defendants upon said real estate."

The decree of the district court should be otherwise affirmed; and the costs of appeal apportioned equally between the parties.

It is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.

On Motions for Rehearing.

BRICE, Chief Justice.

The motions of appellant and appellees for a rehearing are each denied. The order of remand shall be amended to read as follows:

The cause is remanded to the district court with instructions to amend its decree by striking therefrom paragraph 6, as follows: "That this judgment shall be without prejudice to any further rights which the parties may have under the contract involved in this litigation, as to the metal lath in the corners of the bathrooms and closets of the building erected by plaintiff as contractor for defendants upon said real estate."

The decree of the district court is otherwise affirmed.

The district court may in its discretion allow appellant reasonable attorney's fees for the presentation of his case in this court.

The costs of the appeal shall be apportioned equally between the parties.

It is so ordered.

ZINN, SADLER, MABRY, and BICKLEY, JJ., concur.