

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00441-CV

CONNOR DRUMMOND RICE AND SCOTT D. RICE AS
CO-TRUSTEES FOR THE 2001 SCOTT D. RICE TRUST, APPELLANTS

V.

MATTHEW E. MALOUF, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 98,389-D, Honorable Paul Davis, Presiding

July 8, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and BOYD, S.J.[1]

This appeal involves a suit brought against the recipient of funds wrongfully paid, seeking to impose a constructive trust on the funds and recover them. Among other defenses, the recipient asserted he received the funds in good faith, for value and without knowledge of any impropriety. The jury agreed. The trial court rendered a take-

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

nothing judgment in favor of the recipient, but denied the recipient's request for attorney's fees. Both sides appeal. We will affirm the judgment.

## Background

The parties are familiar with the facts, and in this memorandum opinion we relate only those pertinent to the appellate issues we address. Appellant Scott D. Rice and Steve Sterquell, an Amarillo CPA and long-time advisor to the Rice family, served as co-trustees of the 2001 Scott D. Rice Trust. Sterquell died in April 2009.[2]

Sterquell also had business dealings with appellee Matthew E. Malouf, a Dallas real estate developer. Sterquell acted as accountant for both Malouf and Rice. In October 2005, Sterquell, acting alone and without the knowledge of his co-trustee Rice, caused $1.6 million to be transferred by wire from a Rice Trust bank account to Malouf's personal account. That transfer is the subject of this litigation.

Malouf conducted business through various entities. He "own[ed]" Malouf Interests, Inc.,[3] which served as "a one percent general partner" of Minerva Partners, Ltd., Java Partners, L.P., and TM Development Partners, Ltd. Evidence also showed Malouf, during the time pertinent to this case, was the sole limited partner of these entities.

---

[2] After Sterquell's death, appellant Conner Drummond Rice joined his brother Scott as a co-trustee.

[3] Documents in evidence state Malouf also served as president and sole director of Malouf Interests, Inc.

2

The Rice Trust had no business with Malouf, and no one disputes the jury's finding that the $1.6 million transfer was a breach of trust by Sterquell. Evidence showed, however, that a company controlled by Sterquell, AHF Development, Ltd., served Malouf as a "qualified intermediary" for tax-deferred like-kind exchanges of property under § 1031 of the Internal Revenue Code.[4] The evidence contains documents reflecting AHF Development's participation as qualified intermediary in sales of properties by Minerva Partners, Java Partners and TM Development Partners. As one example of such documents, the record contains documents dated in January 2005 in connection with the sale of a property in Indiana by Minerva Partners to an individual buyer. The documents include an assignment to which Minerva Partners, as "exchanger," AHF Development, as "qualified intermediary," and the buyer are parties, providing for the closing of the sale of the property as an exchange under § 1031. Sterquell signed the assignment on behalf of AHF Development, his signature line bearing the title "exchange coordinator."

A similar assignment appears in the evidence, dated in February 2005, with respect to the sale of a property in Denton County, Texas by TM Development Partners. AHF Development is a party to the assignment, and is identified as qualified intermediary. As with the Minerva Partners assignment the previous month, this document provides that the proceeds of the sale will be paid to AHF Development in its role as qualified intermediary. Sterquell also signed this document on behalf of AHF Development, again in the capacity of "exchange coordinator."

---

[4] *See generally* 26 U.S.C. § 1031; 26 CFR 1.1031(k)-1.

As a third example, a title company's settlement statement appears in the evidence, with regard to the June 2005 closing of the sale of another property in Indiana. The seller's statement reflects the sale is from AHF Development, Ltd., as qualified intermediary for Java Partners. The statement provides for payment of the net sales proceeds as "1031 proceeds" payable to AHF Development.

Malouf testified that the years 2004 through 2006 were busy years for his real estate business, and his entities deposited the net proceeds of several property sales, totaling some $15.8 million, with AHF Development as qualified intermediary. However, on none of the occasions in which sales proceeds were deposited with AHF Development did Malouf identify a replacement property to complete the like-kind exchange, within the time limit required by § 1031.[5] In such instances, the seller (or "exchanger," in § 1031 parlance) is entitled to the net sales proceeds being held by the qualified intermediary.[6] Malouf testified that all the funds his entities deposited with AHF Development pursuant to § 1031 were returned.

In April 2005, Sterquell established a single-signatory bank account at Herring National Bank in Amarillo in the name of the Rice Trust. In subsequent months, checks and wire transfers from this account went to various payees, including Scott Rice.

---

[5] *See Terry v. SunTrust Banks, Inc.,* No. 11-1704 & 11-1707, 2012 U.S. App. Lexis 13632, at *4-5 (4th Cir. July 2, 2012); *Frontier Pepper's Ferry, LLC v. LandAmerica 1031 Exchange Servs.* (*In re Landamerica Fin. Group, Inc.*), No. 08-35994-KRH, 2009 Bankr. Lexis 4133, at *9-10 (Bankr. E.D. Va. May 7, 2009) (both describing operation of § 1031).

[6] *See Frontier Pepper's Ferry,* 2009 Bankr. Lexis 4133, at *9-10 ("In the event that the Replacement Property is not identified or closed within the specified time periods, then the qualified intermediary pays an amount equal to the net sales proceeds to the exchanger").

4

In August 2005, Malouf was presented with a business opportunity making it necessary that he borrow a substantial amount of money. He testified at least one bank he approached suggested that he "improve his balance sheet" by reducing his other indebtedness. He sent an August 15 e-mail to Sterquell, entitled "1031 funds." In the email, Malouf expressed his need "to get the 1031 funds." He explained, "I have to pay down my debts on time to get the loan, and I can't let [his new client] down on the timing."

When the funds were not forthcoming, Malouf sent a September 13 e-mail to Sterquell giving him wiring instructions for the transfer of $1.6 million to a Minerva Partners bank account on September 16. Malouf determined the amount of his request by consulting an "informal worksheet" he maintained, reflecting § 1031 funds AHF Development held. According to Malouf's testimony, based on his worksheet he believed he had more than $1.6 million "on deposit" with AHF Development when he sought his "entities' money back." Another record shows that as of October 10, 2005, the balance of § 1031 funds remitted to AHF Development for the Malouf limited partnerships stood at $1,762,672.24.

Sterquell did not, however, transfer the $1.6 million as directed by the September 13 instructions. There is evidence that, because of Sterquell's misuse of funds in AHF Development's account, it lacked the funds to comply with Malouf's request. In fact, an AHF Development "account detail" ledger in evidence shows available funds of only $517.12 at the time of Malouf's September 13 e-mail.

Meanwhile the Rice Trust sold land in New Mexico. Sales proceeds totaling over $2.9 million were deposited to the trust's Herring National Bank account on October 7, 2005. On the next business day, October 11, 2005, Sterquell transferred by wire $1.6 million from the trust's account to Malouf's personal account.

Rice and Malouf each had extensive business dealings with Sterquell, but not with each other. Only after the death of Sterquell on April 1, 2009, did Rice and Malouf meet. It was during this period that Rice concluded Sterquell had improperly diverted $1.6 million from the trust to Malouf.

Contending Malouf was unjustly enriched by the $1.6 million transfer, the trustees of the Rice Trust brought suit. Rice lives in New Mexico, and the trust instrument governing the Rice Trust contains language adopting New Mexico law. Malouf asserted an affirmative defense to the trustees' claim based on a provision of the New Mexico Trust Code,[7] contending he received the $1.6 million in good faith, for value and without knowledge of Sterquell's misconduct. In the trial of the case, the jury charge contained questions seeking findings on each of those three elements. The jury made findings favorable to Malouf. Based on those findings, the trial court rendered a take-nothing judgment in favor of Malouf. But it denied Malouf's request for attorney's fees. The Rice trustees appeal through two issues and by cross-appeal Malouf challenges the denial of his request for attorney's fees.

---

[7] N.M. Stat. Ann. § 46A-10-1012(A) (LexisNexis 2012) ("A person other than a beneficiary who in good faith . . . and for value deals with a trustee, without knowledge that the trustee is exceeding or improperly exercising the trustee's powers is protected from liability as if the trustee properly exercised the power"). The applicability of the New Mexico trust code provision to the claims between these parties is not disputed on appeal.

Analysis

Rice's Appeal

In their first issue, the Rice trustees argue the evidence was legally or factually insufficient to support the jury's finding that Malouf dealt with Sterquell for value. The specific inquiry, to which the jury gave an affirmative answer, was, "On the occasion in question, did Malouf deal with Sterquell for value?" The term "value" was not defined but the jury was instructed that "the occasion in question" referred to "the October 11, 2005 transaction when Steve Sterquell, as co-trustee of the [Trust], caused $1,600,000 to be wire transferred from the [Trust] bank account to [Malouf's] personal bank account."

The trustees do not challenge on appeal the jury's findings that Malouf dealt with Sterquell in good faith and without knowledge of Sterquell's misconduct.[8]

Applicable Legal Standards

In examining the legal sufficiency of the evidence supporting a jury finding, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference supporting it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The

---

[8] The charge posed to the jury the question, "On the occasion in question, did Malouf deal with Sterquell without knowledge that Sterquell was exceeding or improperly exercising his powers as Co-Trustee of the [Rice] Trust?" It instructed the jury that "A person has knowledge of a fact if the person (1) has actual knowledge; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, has reason to know it."

evidence is legally sufficient if it enables a reasonable and fair-minded person to reach the verdict under review. *Id.*

In reviewing the factual sufficiency of the evidence, we first examine all the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986) (per curiam), and, having considered and weighed all the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.), we may not substitute our opinion for the trier of fact merely because we might have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988).

Application

For explication of the "for value" requirement, the parties turn to the Restatement (Second) of Trusts. In pertinent part, § 284 of the Restatement states, "If the trustee in breach of trust transfers trust property to . . . a person who takes for value and without knowledge of the breach of trust . . . the latter holds the interest so transferred . . . free of the trust, and is under no liability to the beneficiary." It refers to such a transferee as a "bona fide purchaser."[9] Restatement (Second) of Trusts, § 284 (1959). Generally, a

---

[9] *See, e.g., Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063 (2nd Cir. 1995) (applying § 284). Similarly, the Rice trustees refer to cases applying the comparable requirement that a holder in due course of a negotiable instrument takes

transfer by a trustee in breach of trust in consideration of the extinguishment of a pre-existing debt or other obligation is not a transfer for value. Restatement (Second) of Trusts, § 304(1) (1959). There are exceptions to the general rule. One provides that a transfer by the trustee in consideration of extinguishment of a pre-existing debt or other obligation is for value if the trust property transferred is money. Restatement (Second) of Trusts, § 304(2)(a) (1959). Thus, an illustration of the rule provides: "A is trustee of $1000. In breach of trust he pays the money to B in payment of a personal debt of $1000 owed by A to B. B is a purchaser for value."

The trustees contend the evidence of Sterquell's transfer does not fit the pattern described by § 304(2)(a). They argue the transfer of the $1.6 million to Malouf's personal account cannot have been for value because the § 1031 funds belonged to the limited partnerships, not Malouf personally. We cannot agree the contention renders the evidence of a transfer for value insufficient.

As noted, the jury heard evidence that AHF Development held, at the time of the October 11 transfer, some $1.7 million in funds belonging to Malouf's limited partnerships. The jury heard testimony that Malouf, directly or through his sole-shareholder corporation Malouf Interests, Inc., owned one-hundred percent of Minerva Partners, Java Partners, and TM Development. There is no dispute that Malouf was authorized, on behalf of the limited partnerships, to direct payment of the funds held by AHF Development, and we perceive no dispute that Malouf further was authorized to receive the funds on their behalf.

the instrument for value. *See, e.g.*, *Godat v. Mercantile Bank*, 884 S.W.2d 1 (Mo. App. E.D. banc 1994).

We also think it is clear the evidence showed Sterquell's October 11 transfer was made in response to Malouf's repeated requests for payment of $1.6 million from the § 1031 funds. Indeed, the evidence would seem to lead to no other rational conclusion. In these circumstances, we find Sterquell's act of wiring the funds to Malouf's personal account, rather than to the Minerva Partners account as instructed, is a fact of no consequence bearing on the issue of value.

Nor can we agree the jury was required to find important the other evidence the trustees emphasize. They point to evidence that AHF Development held no § 1031 funds for Minerva Partners at the time of the transfer; among Malouf's limited partnerships, only Java Partners and TM Development actually had § 1031 sales proceeds on deposit with the qualified intermediary on October 11. Nevertheless, on receiving the $1.6 million, Malouf applied some $653,000 of the funds to a bank loan owed by Minerva Partners. And he applied another $700,000 to reduce the principal balance of a note obligation of another limited partnership entity, Margaux Water Towers, LP. He made a personal investment of some $74,000 in another business venture, and used the remaining funds otherwise for his personal benefit.

A like-kind exchange of properties under § 1031 serves merely to defer recognition of any gain or loss on the sale of the initial property and thus defer any federal tax due.[10] And, except for the one percent general partner's interest, any federal

---

[10] *See Maloney v. Commissioner,* Nos. 41612-84, 1716-85, 93 T.C. 89, 1989 U.S. Tax Ct. Lexis 105, at *14 (T.C. July 25, 1989) ("The purpose of section 1031 [26 U.S.C.] (and its predecessors) is to defer recognition of gain or loss on transactions in which, although in theory the taxpayer may have realized a gain or loss, the taxpayer's economic situation is in substance the same after, as it was before, the transaction.

tax liability of the limited partnerships resulting from gains on sales of property would find its way to Malouf's individual return.[11]  With those realities in mind, we cannot agree the uses to which Malouf put the funds after their receipt bear significantly on the question whether the October 11 transfer was in satisfaction of the obligation to return the deposited § 1031 funds.[12]

The trustees further argue no evidence shows Malouf or any of the limited partnerships received credit for the $1.6 million against the funds held by AHF Development.  Keeping in mind that Sterquell's transfer of Rice Trust funds to Malouf was in breach of his duties as trustee, the jury likely did not find it surprising that his AHF Development records contain no entry reflecting the transfer.  Beyond that, so far as the evidence shows, Sterquell neither segregated the funds held as qualified intermediary from other funds nor kept a record of the identities of the Malouf entities for which particular amounts were received or distributed.[13]  The evidence shows that Malouf, like Scott Rice, trusted Sterquell implicitly.

---

Stated otherwise, if the taxpayer's money continues to be invested in the same kind of property, gain or loss should not be recognized").

[11] "Under the Internal Revenue Code, partnerships are not taxpayers or taxable entities.  When a partnership receives income, the partners record their share of that income on their individual returns and are taxed on it, whether or not that income is actually distributed to them. Partners also deduct partnership losses on their individual returns."  *Goulding v. United States,* 957 F.2d 1420, 1427 (7th Cir. 1992).

[12] For purposes of determining whether the requirements of a like-kind deferred exchange under § 1031 have been met, a receipt of funds by an agent of the exchanger (not including a qualified intermediary) is treated as receipt by the exchanger.  *See* 26 CFR 1.1031(k)-1(f)(2).

[13] The AHF Development "account detail" ledger in evidence contains entries identifying apparent transactions involving Malouf's entities with wording such as "Wire

Despite the informality of Sterquell's record-keeping, and whether viewed in the light most favorable to the verdict or from the entire record, we find the evidence permitted reasonable and fair-minded jurors to believe the $1.6 million wired by Sterquell to Malouf's personal bank account was in partial extinguishment of the pre-existing obligation due the Malouf entities from AHF Development. Hence, the evidence was legally and factually sufficient to support the jury's finding that Malouf dealt with Sterquell for value. We overrule the trustees' first issue.

By their second issue, the trustees contend the trial court reversibly erred by submitting a question apportioning the fault of Sterquell, Scott Rice, and Malouf. Because of our disposition of their first issue, it is unnecessary to consider the second issue. Tex. R. App. P. 47.1.

Malouf's Cross-Appeal

Through one issue on cross-appeal, Malouf asserts the trial court abused its discretion by denying him an award of attorney's fees and costs. The applicable law, section 46A-10-1004 of the New Mexico Trust Code, provides:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

N.M. Stat. Ann. § 46A-10-1004 (LexisNexis 2012). The statutory specification that a trial court *may* award attorney's fees and costs indicates the decision is left to the court's discretion. *State v. Pacheco,* 2008-NMCA-851, ¶ 25, 143 N.M. 851, 182 P.3d

---

in from Matt Malouf," "Wire to Matt Malouf (Western Title)," and "Wire in from Chicago Title (Matt)."

834.  And absent an abuse of discretion, an appellate court will not alter a trial court's award of attorney's fees.  *Lenz v. Chalamidas,* 113 N.M. 17, 18, 821 P.2d 355, 356 (1991) (citing *Montgomery v. Karavas,* 45 N.M. 287, 114 P.2d 776 (1941)).  "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances, or when the ruling is contrary to the reasonable, probable, and actual deductions that may be drawn from the facts and circumstances."  *Id.* (citing *State v. Soto,* 2007-NMCA-77, ¶ 10, 142 N.M. 32, 162 P.3d 187 (internal quotation marks and citations omitted).  "Many considerations enter into the matter of fixing attorney fees, not the least important of which are: the ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom."  *In re Brown's Estate,* 48 N.M. 580, 586, 154 P.2d 247, 251(N.M. 1944) (quoting *Elsea v. Broome Furniture Company, Inc.,* 47 N.M. 356, 143 P.2d 572, 584 (1943)).

Citing our decision in *Lyco Acquisition 1984 Ltd. Partnership v. First National Bank,* 860 S.W.2d 117 (Tex.App.--Amarillo 1993, writ denied), Malouf concludes that because his proof of attorney's fees was unopposed the trial court "clearly abused its discretion by denying the fee application."  Lyco sued a bank for conversion and violation of the Texas Trust Code.  *Id.* at 120.  The bank requested an award of attorney's fees under § 114.064 of the Trust Code.  Before the trial court ruled on the bank's motion for summary judgment, Lyco non-suited by amended pleading its cause of action arising under the Trust Code.  *Id.* at 120-21.  The trial court granted summary judgment for the bank but denied its request for attorney's fees.  In addressing the bank's complaint of this decision, we found its request for attorney's fees under §

13

114.064 was a claim for affirmative relief and therefore not preempted by the non-suit of the Trust Code claim. We then examined the attorney's affidavit in light of the factors stated in *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 450-51 (Tex.App.--Corpus Christi 1990, writ denied).[14] He described the work necessary to defend the bank because the transactions in question occurred "many years ago." In reaching his opinion of a reasonable and necessary attorney's fee, he considered "the untimeliness of Plaintiff's action." We found the bank had demonstrated the trial court's failure to award some amount of attorney's fees was not equitable or just. *Id.* at 122.

The facts of *Lyco* differ notably from the present matter. In *Lyco* we found as a matter of law that Lyco's live cause of action was barred by limitations. And the untimeliness of the complaint necessitated significant work by the bank's attorney. Here, the jury found that Malouf was unjustly enriched by Sterquell's wrongful disposition of trust property. But it also found that Malouf dealt with Sterquell in good faith, for value, and without knowledge of any impropriety by Sterquell. Because the issue of attorney's fees was determined in a post-trial proceeding, the court resolved all disputed facts necessary to its determination. In that capacity, it was the sole judge of the weight and credibility of the evidence. Findings of fact and conclusions of law were not prepared. It was the trial court's task to determine whether justice and equity required an award of attorney's fees and costs to Malouf. Based on the record before

---

[14] Citing *A. H. Belo Corp. v. Southern Methodist University,* 734 S.W.2d 720, 724 (Tex.App.--Dallas 1987, writ denied) the court stated, "Factors to be considered in determining the reasonableness of the attorneys (sic) fees include: time and labor involved, nature and complexities of the case, the value of the interest involved, the extent of the responsibilities assumed by the attorney, and the benefits resulting to the client from the attorney's services").

us, we are unable to say its decision was an abuse of discretion.  Malouf's sole issue on cross-appeal is overruled.

## Conclusion

Having overruled the only issue of Rice necessary for disposition of its appeal and having overruled Malouf's sole issue on cross-appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice