[Civ. No. 2895. Second Appellate District, Division Two.—June 7, 1919.]

JAMES H. PENCE, Appellant, v. FRED L. DENNIE, Respondent.

[1] BUILDING CONTRACTS—AUTHORITY TO MAKE CHANGES—ESTOPPEL.—The very purpose of a provision in a building contract requiring written authority of the owner to make changes is to avoid controversies as to what changes have been authorized by the owner; and in the absence of very clear and convincing evidence of waiver or estoppel against the owner with reference to changes made without such written authority, the terms of the contract should control.

[2] ID.—SUBSTITUTION OF MATERIALS—VIOLATION OF CONTRACT—DAMAGES.—Under such a contract, where artificial stone construction on the front of the building is called for, the substitution of brick construction, without the consent of the owner, constitutes a violation of the contract for which the owner may recover damages, notwithstanding the value of the building may not have been reduced thereby.

[3] ID.—KNOWLEDGE OF CHANGES—ESTOPPEL.—Where the owner was absent when such substitution was made, he is not estopped from relying upon the provision of his contract that no changes should be made without his consent in writing because he made no particular protest upon learning such fact.

[4] ID.—ACTION TO RECOVER BALANCE—COUNTERCLAIM—EVIDENCE—FINDINGS.—In this action to recover an alleged balance due on a building contract, together with the value of extras alleged to have been furnished at the request of the defendant, and a bonus claimed under the contract, wherein the defendant by counterclaim claimed damages for delay in completing the contract, for material and labor not furnished as called for by the contract and for defective work and materials, the evidence, though conflicting, was sufficient to support the findings of the trial court as to the various items of claim and counterclaim.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. Joslin for Appellant.

Percy Hight for Respondent.

SLOANE, J.—The plaintiff, a contractor and builder, brought this action to recover from the defendant an alleged balance of $1,066.84 on a building contract totaling $46,750, together with $1,282.16 for extras alleged to have been furnished at the request of defendant, and four hundred dollars claimed as a bonus under the contract, making a total for which judgment was demanded of $2,759.

The defendant, by answer and counterclaim, admitted the original contract price of $46,750, but alleges payment of all but $90.35, denies liability for four hundred dollars bonus, or any part thereof, and claims damages against plaintiff of $450 for delay in completing contract, $1,523 for items of material and labor not furnished as called for by the contract, and $1,685.15 for defective work and materials, and asks judgment on his counterclaim for $3,427.69.

On the trial of the case the court found that the original contract price due the plaintiff was $46,750, and that he was entitled to extras in the sum of $205, and no more, and disallowed his claim of four hundred dollars as a bonus. The court further found that the defendant has paid on the contract $45,969.36, thus leaving a credit due the plaintiff of $985.64. As against this credit to the plaintiff the court found for defendant on his answer and counterclaim, $450 damages for delay in completing the contract, $25 insurance due from plaintiff, $1,349.70 for labor and material omitted in the contract work, and $1,553.68 damages for defective work and materials; but in its conclusions of law the court omits the item of $450, thus leaving a balance due defendant of $1,942.74, after offsetting plaintiff's claim. The judgment, however, was that neither plaintiff nor defendant recover on the respective claims,

but that defendant have judgment for costs in the sum of $39.40.

The result of the trial was that the court found, after crediting defendant's payments and allowing the $205 extras, a balance due plaintiff amounting to about one thousand dollars, and found that the defendant was entitled to approximately three thousand dollars by way of offset. It is apparent, therefore, that there must on this appeal be found an enlargement of plaintiff's credits or reduction of defendant's offsets, or both, aggregating the sum of two thousand dollars, before it will appear that the plaintiff is prejudiced by this judgment.

The plaintiff has appealed from the judgment in favor of defendant and from an order of the court denying plaintiff's motion for a new trial. As the proceedings have been taken since the amendment abolishing appeal on denial of motion for new trial, the matter comes up on the appeal from judgment alone, and is presented under the alternative method on the typewritten transcript of the record in the trial court.

The only matter to be considered is the sufficiency of the evidence to support the findings of the court as to the various items of claim and counterclaim. It has been no slight task to sift out the testimony, which is more voluminous than illuminating in many of the details, in order to ascertain if in each particular there is some substantial weight of evidence supporting the conclusions reached by the court as to the facts.

The basis of the action purports to be a written contract for the construction of the building in question, with plans and specifications referred to as being annexed to the contract and filed therewith in the office of the county recorder. No plans and specifications were so attached or filed in the recorder's office, but plans and specifications were produced and admitted in evidence which it was shown were accepted and acted on by the parties to the contract throughout the construction of the building. The contract itself is a matter of some uncertainty and much dispute between the parties as to some of its items. But we are satisfied that the court was justified in its findings as to the contract as actually agreed upon and executed.

The original agreement was that the building was to be constructed in accordance with plans and specifications to be prepared, for a total sum of $46,750. Work was begun, and certain excavation work and foundation completed, at a valuation of two thousand dollars. This was either before the contract was executed, or there was a second contract made of date July 17, 1913, after the foundation work was completed. This contract recites an agreed price of $44,750, and makes no provision for the foundation work, which had already been done and paid for, the aggregate making up the $46,750. It also fixes the time in which the work was to be completed as 92 working days, as against 120, and 105 days shown by other copies of contracts relied upon by plaintiff. There is no substantial dispute as to what the terms of the contract actually were, however, excepting as to the time in which the work was to be completed, and as to which party should pay the insurance during the construction work. In these particulars the plaintiff claims the contract was changed after its execution, in the copy produced by defendant, reducing materially the period in which the building was to be finished, and obligating the contractor to pay the insurance (which amounted to only $25). The defendant testified that these alterations were agreed to and made before the contract in question was executed, and the court accepted in evidence, as the true contract, the one claimed to be correct by the defendant. As the circumstances tend to corroborate the defendant's explanation of the changes, the court was justified in its ruling.

It is this difference in the period of completion of the work that determines the question as to whether plaintiff was entitled to a bonus for completing the work ahead of time or was liable in damages for the failure to complete the work as stipulated, and it was, we think, justifiably determined in favor of defendant, thereby eliminating plaintiff's four hundred dollar claim for a bonus.

The next item of plaintiff's claim also arises on a construction of the provisions of the contract and specifications, and the law applicable thereto. The court found that the plaintiff had actually furnished in the construction of the building, as alleged in his complaint, extras of the value of $1,282.16, but that the same were unauthorized under the

terms of the contract. The specifications adopted as part of the contract contain the following provisions: "No extras shall be allowed without written order from the architect. . . . Should any changes, additions or omissions in the work provided for in this contract be ordered, the contractor shall not be authorized to comply with such order without previously obtaining written authority therefor from the owner, and the contract shall not be deemed altered thereby, either as to time when the work shall be completed, contract price or work to be done, excepting as expressly stated in such authority." There is no pretense that either the architect or the owner ordered or authorized any of these extras in writing, or authorized them expressly in any way, excepting as to the item of $205, which the defendant admitted to having orally ordered, and which he consented to allow on plaintiff's claim, and which has been allowed by the court. It is claimed, however, that a superintendent representing the defendant on the work had knowledge of most or all of these extras, and consented orally and by acquiescence, to their incorporation in the building; but it is not shown that this superintendent had any authority in the premises, other than to see that the contract was carried out. Plaintiff's main contention, however, is that the defendant was aware of most of the extra work and material being furnished, and permitted it to be put into the building without objection, and that he is estopped by his conduct from taking advantage of the requirements of the contract for authorization in writing.

The defendant denies knowledge that the extras were being furnished, as to some of the items, denies that he knew they were extras in some instances, and, in regard to some of the items, we are inclined to the conclusion that he was aware at the time that the plaintiff was putting in extra work and material, and made no objection thereto; but conceding, as to the last-mentioned work and material, that defendant's counsel is correct in his application of the law of waiver and estoppel, it would only apply to a small proportion of the amount claimed.

With reference to the larger items of $365 for glass mirrors in the wall beds, $103 for mirrors in the dressing-rooms, and $77 for extra plastering, there is nothing to show that plaintiff's attention was called to the fact, or that he

was aware that these did not go in under the contract. The beds and dressers of which the mirrors formed a part were called for by the contract without specification as to their finish; and it does not follow, as a matter of law, that if the contractor furnished them with mirrors, the owner was bound to know that he was not doing it as part of his contract. With regard to other charges for extras, the plaintiff either denies that they were extras or that he knew anything about them.

[1] If there were no provision in the contract requiring an express order in writing, it would still be an open question, under the testimony, as to whether much of this extra charge could be maintained, under the conflicting evidence. But it should be borne in mind, under the conditions of this contract, that the very purpose of such provisions for written authority to make changes is to avoid just such controversies as have arisen here; and in the absence of very clear and convincing evidence of waiver or estoppel, the terms of the contract should control.

The principal item of damages allowed defendant on his counterclaim is the sum of one thousand dollars for the substitution of brick construction on the front of the building, where the contract called for artificial stone. When the stone work was put in, or partly so, it was found defective. The defendant was absent in the east, and the contractor, after consulting with defendant's architect and superintendent, and in order to save the delay incident to obtaining new stone material, and, perhaps, in uncertainty of its then coming up to the requirements, substituted brick, the details therefor having been supplied by the architect. There was no written consent by the owner to this change, and no consent or authorization by him of any kind. When he returned home the change had been made. He does not seem at the time of his return to have made any special objection to the substitution. The contractor saved nothing, apparently, by the change from stone to brick. The original estimate for this part of the work was $422. There is testimony in the record that to now make the change and complete the job as called for by the contract would cost one thousand dollars or more.

[2] There was a violation of the contract in furnishing defective stone work and in replacing it with brick without

41 Cal. App.—28

the written consent, or the, consent at all, of the owner. The owner was entitled to have this stone front, and we are not prepared to say that the court was not, under the evidence, justified in allowing him damages. The measure of damages was the cost of replacing the work with the material called for by the contract; but in view of the fact that the value of the completed building was probably not greatly reduced by the substitution of brick for the artificial stone, it seems that this measure of damages, though a lawful one, places a harsh penalty on the contractor, especially in view of the fact that the owner's architect and superintendent both acquiesced in the change. However, neither of them are shown to have had authority to authorize such change in the general character of the structure, and, in any event, the authority was not obtained from the owner nor evidenced as specified in the contract. [3] We do not think defendant is estopped from relying upon the terms of his contract that no changes should be made without his consent in writing. Had he known of the change when it was in process. and stood by without objection, the doctrine contended for by appellant might apply. But he did not know of it until it was done, and the fact that he then made no particular protest was in no way prejudicial to the appellant.

[4] It is not necessary to review the findings of the court as to each of the specified items of damage for uncompleted work or for defective work and materials. There was conflict in the testimony as to practically every item. While we are not satisfied that every allowance made to defendant by the court is supported by the evidence, we are satisfied that there was evidence to support a sufficient offset to more than balance the amount to which the plaintiff was entitled.

The judgment is affirmed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1919.

All the Justices concurred.