[Civ. No. 273. Fourth Appellate District.—April 8, 1930.]

J. E. SCHUMANN, Appellant, v. CALIFORNIA COTTON CREDIT CORPORATION (a Corporation), Respondent.

Walter Sorensen for Appellant.

Irvine P. Aten for Respondent.

MARKS, Acting P. J.—Under date of July 13, 1927, the parties to this action entered into a written contract concerning a crop of cotton being raised in Madera County, California, by H. Neilan. At that time Neilan was indebted to appellant in the sum of $2,200 on the purchase price of pumping plants and pumping equipment sold by appellant to him under conditional sales contracts which reserved the title to the personal property in appellant.

Respondent was a corporation organized and existing for the purpose, among other things, of loaning money to growers of cotton to enable them to finance their farming

operations. It had loaned Neilan approximately $3,900 with which to raise a crop of cotton upon the Madera County property and had taken a crop mortgage to secure its loan. Neilan required additional money from respondent to mature and harvest his crop and to enable this to be advanced, as well as to insure that the pumping plants and pumping equipment would remain upon the property during the cotton growing season, the parties entered into the written contract in question.

The contract provided, among other things, that respondent would advance "to the said H. Neilan a sum of money not to exceed $3,000.00 to be used by said H. Neilan in farming said crop of cotton exclusive of picking and ginning advances" and that respondent would pay to appellant "the sum of $1,000.00 out of the first money derived from the sale of the crops produced upon the above described premises after deducting therefrom any sums of money which may have been advanced by second party to said H. Neilan, not exceeding, however, the sum of $3,000.00 plus picking and ginning advances, and second party by executing this agreement does hereby agree that it will pay over to first party the sum of $1,000.00 out of the first proceeds derived from the sale of the crops produced upon said above described premises after deducting any moneys advanced by it to the said H. Neilan, which advances are not to exceed the sum of $3,000.00 for raising crop, plus picking and ginning advances. It is distinctly understood and agreed that the said second party shall not be entitled to deduct from the proceeds derived from the crops to be produced upon the hereinbefore described premises, any sums of money which have not been actually used in connection with the growing and harvesting of the crops upon the said above described premises until after said first party has been paid the said sum of $1,000.00."

In appellant's complaint it was alleged that respondent received from the sale of the cotton and cotton seed grown on the Madera County ranch the sum of $6,206.62 after the cost of ginning the cotton had been deducted by the ginning company, and that respondent had expended the sum of $1582.25 for picking the cotton, together with the $3,000 for farming operations, leaving a balance in its hands of the sum of $1624.37, out of which appellant was entitled

to be paid the sum of $1,000. Respondent's answer admitted the amount received by it for the cotton and cotton seed, but alleged it had expended the sum of $2,638.48 for picking expenses in picking the cotton and delivering it to the gin, and further alleged that there was a modification of the contract whereby the parties had agreed it might advance to Neilan the sum of $4,000 instead of $3,000 for farming and maturing the crop of cotton. Under the allegations of the answer the respondent plead an executed oral agreement modifying the contract of July 13, 1927, under which oral agreement it was authorized to advance Neilan $4,000 in the place of $3,000 for farming operations as provided in the written contract, and alleged facts sufficient to put in issue the question of whether or not appellant had waived his right to demand his $1,000 before respondent had received the $4,000 advanced by it, together with the picking and ginning advances made by it, and also whether or not appellant was estopped from demanding his money until respondent had received its advances as last set forth.

Appellant presents two questions to be decided upon this appeal. First: He urges that under the language of the contract the respondent is only entitled to deduct and retain for itself the cost of the actual picking of the cotton, that is the taking of the fibre from the boll and placing it in the sacks by the pickers; and second: That it is only entitled to deduct and retain the sum of $3,000 as cost of farming operations as specified in the written contract. We will consider these questions in the order stated.

It is admitted that the actual cost of picking the cotton from the plant and placing it in the sacks was the sum of $1481.19. The evidence disclosed, however, that an additional sum of $1157.29 was received from respondent by Neilan and used by him in other expenses connected with the harvesting of the cotton crop, such as the wages paid a weigher to weigh the cotton brought in from the fields by the pickers, upon which weights they were paid for their labor, in buying picking sacks for use by the pickers, in renting tents used as sleeping quarters by them, in paying the cost of trucking the cotton from the ranch to the gin, and other such expenses. Appellant maintains that these

expenditures were not a proper deduction to be made under the terms of the written contract.

Appellant construes the phrase "plus picking and ginning advances" as though the words "as cost of actual picking, and cost of actual ginning" were used. We think this is too narrow a construction to be placed upon these phrases in view of the general terms of the contract, apparent intention of the parties, and common trade usage. The phrase "plus picking and ginning advances" is explained by a following phrase, under the terms of which it would appear to be the intention of the parties to include therein any sums of money which were "actually used in connection with the growing and harvesting of the crops."

It seems that the phrases "picking advances" and "ginning advances" are in common use in the districts raising cotton and have a well-defined meaning there. Evidence was introduced to the effect that these phrases have a known usage in these districts. Under such usage they include the cost to the grower of the picking sacks used by the pickers, the wages of the weigher, the rent of tents or other living quarters for the pickers, the cost of trucking the cotton from the field to the gin, and other such expenses.

"It is a general rule that when there is a known usage of the trade, persons carrying on that trade are deemed to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract." (*Buckner* v. *Leon & Co.*, 204 Cal. 225 [267 Pac. 693].)

It is not necessary, however, to rely upon the trade definition of these terms to conclude that at least part of these expenses should be allowed respondent. In this case the wages of the cotton pickers included not only the actual money paid per pound for the cotton picked, but to this was added sleeping quarters for the pickers. Wage is compensation for services rendered, and this compensation may take the form of money paid or other value given, such as board, lodging or clothes. (18 R. C. L. 530; 39 Cor. Jur. 160; *Hancock* v. *Yaden,* 121 Ind. 366 [16 Am. St. Rep. 396, 6 L. R. A. 576, 23 N. E. 253]; *Moulin* v. *Columbet,* 22 Cal.

508.) We are of the opinion that the phrases under consideration include money advanced by respondent to Neilan and used by him in paying the necessary expenses connected with the picking of the cotton, its transportation to the gin and the ginning thereof, and that the finding of the trial court that the sum of $2,638.48 so used for this purpose was supported by the evidence in this case.

In connection with the second ground relied upon by appellant for reversal, it shows that on or about August 1, 1927, respondent had advanced to Neilan the sum of $2,940.35, which had been used by him in paying his expenses in raising the crop of cotton. It was not matured on this date, and it was evident that Neilan would require more money to bring it into maturity. The representative of respondent took the matter up with and explained the circumstances to appellant, and the evidence shows that appellant agreed to permit respondent to advance Neilan an additional sum of $750 for this purpose and that this was to be repaid to respondent before appellant would receive his $1,000. Respondent advanced this sum to Neilan with the knowledge of appellant. It later appeared that more money was needed by Neilan. There was a bill owing for power which was unpaid, and the power company threatened to turn off its electricity. The agent of respondent and Neilan visited appellant and explained the situation to him. Appellant thereupon agreed to a further advancement of $250 to Neilan by respondent, and agreed that he, appellant, would not demand nor expect to receive his $1,000 until respondent had been repaid the sum of $4,000, together with the picking and ginning advances. Thereupon respondent's agent paid Neilan the sum of $250 in the presence of appellant. Respondent advanced to Neilan for his farming operations the sum of $4,090.47.

Respondent requested appellant to give his written consent to the modification of the contract in connection with the advancement of the $4,000 instead of the $3,000 to Neilan. Appellant promised to give such written consent, but never did so, and because of his failure to do so, now maintains that the parol contract to amend the written contract was never executed. We cannot agree with appellant in this contention. If appellant had given his written consent to the modification of the contract of July 13, 1927,

this contract would have been modified by another written contract and not by an oral agreement. We believe that the oral agreement was fully executed. They agreed orally to the two modifications we have mentioned and in accordance therewith respondent paid Neilan more than the extra thousand dollars. There was nothing for any of the parties to do to make this oral agreement executed. Appellant cannot now be heard to say that his failure to consent in writing to the modification of the original contract, voided his oral consent to such modification. He knew that respondent had acted upon such oral agreement and paid Neilan the thousand dollars in question. He cannot be permitted to stand idly by and see the other party to the contract act upon it and pay out money upon his verbal agreement and consent and then claim that such agreement and consent was inoperative. (*Pence* v. *Dennie,* 41 Cal. App. 428 [182 Pac. 980] ; 10 Cal. Jur. 612.)

Judgment affirmed.

Barnard, J., and Beaumont, J., *pro tem.,* concurred.