[Civ. No. 14303.   Second Dist., Div. One.   Dec. 1, 1944.]

MILDRED HUTCHISON, as President of the Golden State
Ethical Beauty Schools Assn., Inc., et al., Respondents, v.
MARGARETE L. CLARK, as Chief of the Division of
Industrial Welfare, etc. et al., Appellants.

Robert W. Kenny, Attorney General, Alberta Gattone and Elizabeth Palmer, Deputies Attorney General, for Appellants.

Rosalind Goodrich Bates for Respondents.

DORAN, J.—This is an appeal by defendants from a judgment for plaintiffs in an action for an injunction and declaratory relief.

Appellants present the issues on appeal as follows: "Plaintiffs are some twenty-five beauty schools duly licensed and operating under the Cosmetology Act of the State of California (Business and Professions Code, Article 8, Chapter 10). These schools sought an injunction and declaratory relief in the Superior Court of Los Angeles County against the Chief of the Division of Industrial Welfare and the Industrial Welfare Commission asking that subsection (c) of section 4 of Industrial Welfare Commission Order No. 2 N.S. be declared void, inoperative and unconstitutional as to them, and that the defendants and each of them be permanently enjoined and restrained from enforcing or attempting to enforce any portion of said subsection (c) against these plaintiffs.

"The section in controversy reads as follows: 'Bona fide students attending schools registered under the cosmetology act of the State of California, after they have completed 1250 hours of attendance, shall be paid not less than 50% of the total amount received directly or indirectly for services rendered to the public.'

"Plaintiffs contend that the provision is void on its face and also contend that the order is void as to them because it was not validly enacted. A general demurrer was interposed to plaintiffs' complaint. The demurrer was overruled and defendants given ten days to answer. Defendants refused to answer, whereupon judgment was entered for plaintiffs as prayed. Defendants appeal from that judgment. There is much that is redundant in the complaint and much that is mere conclusion, recital and pleading of statutes. With most of these defects appellants will not deal. They will

attempt to adhere only to those errors which go directly to the one question before this Court: Does this complaint state facts sufficient to constitute a cause of action?

"Appellants' argument falls into three parts, as follows: I. The complaint fails to state facts sufficient to raise the question of whether or not subsection (c) of section 4 of Industrial Welfare Commission Order No. 2 N.S. is constitutional. II. The complaint fails to state facts sufficient to show that the order was irregularly promulgated and hence inoperative as to these plaintiffs. III. The order is constitutional on its face."

Respondents summarize the facts as follows:

"In the fall of 1942 the Chief of the Industrial Welfare Commission, then Margarete L. Clark, decided that Beauty students at a certain period, said period arbitrarily selected by her, in their nine months' course, became employees and should be paid. After hearings before a wage board, no member of which was a beauty school owner, the Industrial Welfare Commission arbitrarily classified Cosmetology students in the last three months of their course as employees and ordered the Beauty Schools of the State to compensate said employees under subsection (c) of section 4 of Industrial Welfare Commission Order No. 2 N.S."

"On publication of said order, notice of which was admittedly not given to any beauty school, Mack E. Marin, one of the respondents, owner of the largest school of beauty culture in the State of California, and Mary Malone, of Riverside, California, past president of the United and Registered Cosmetologists of the State of California filed a request for rehearing under section 1188 of the Labor Code on the basis that the order was procured by fraud and commission exceeded its powers."

A petition for a rehearing was denied. Respondents continue as follows:

"Whereupon, effective as of November 23, 1942, the Division of Industrial Welfare notified all of the beauty schools in the state that students who completed 1250 hours, or senior students, must be paid, and failure so to do would be a violation of the Labor Code of the State of California and punishable by fine or imprisonment or both. In a letter addressed to the beauty schools of the state under date of November 20, 1942, Margarete L. Clark, the then director of Department of Industrial Relations, Division of Industrial

Welfare, notified the schools that they would either return the enclosed postcard indicating compliance or their payrolls would be immediately inspected to ascertain whether or not they were paying their students."

The Cosmetology Act as adopted by the Legislature established a comprehensive method by which individuals may practice any one or more of the vocations included in cosmetology as therein set forth. Provision is included for the training, examination and licensing of those who determine to adopt and follow such vocations. The act also provides for the licensing of schools and the requirements thereof; also their supervision.

Among other things it is provided that, "The Board shall admit to examination for a certificate of registration and license as a hairdresser and cosmetician or cosmetologist, at any meeting of the board duly held for the purpose of conducting examination, any person, a resident of this State, who has made application to the board in proper form, paid the fee required by this chapter, and who is qualified as follows: . . . (1) Training of at least 1,600 hours, extending over a school term of nine months in a school of cosmetology approved by the board. . . . "  (Bus. & Prof. Code, § 7332, as amended by Stats. 1939, ch. 168, and by Stats. 1941, ch. 340.)

The order of the Chief of the Division of Industrial Welfare and the Industrial Welfare Commission, hereinbefore set forth, has reference to said 1,600 hours of training above quoted as provided by section 7332 of the Cosmetology Act.

It is argued by appellants that: "The authority for the promulgation of order No. 2 I.W.C.N.S., and all other orders of the Industrial Welfare Commission lies in Part IV, Chapter One of the Labor Code, sections 1171 to 1203 inclusive, and Article XX, section 17½ of the Constitution of the State of California. Under the provisions of the Labor Code (section 1182 thereof), the Industrial Welfare Commission may fix a minimum wage, maximum hours and standard conditions of labor for women and minors engaged in *any occupation, trade* or *industry*. (Italics ours.) Cosmetology constitutes an occupation, a trade, and an industry in the State of California and schools teaching cosmetology are an integral part of that occupation, trade or industry. For proof of this one need look no farther than the cosmetology act (Business and Professions Code, Chapter 10, Division 3).

Here the legislature has provided that the practice of the trade and the regulation of the industry, including schools, shall be carefully supervised by a Board of Cosmetology." It is also pointed out by appellants that, "The fact that the Industrial Welfare Commission drew the line at 1250 hours is not of itself arbitrary. They wanted to require payment to the student for work after completion of the practical operations required by the Cosmetology Board. The Industrial Welfare Commission *estimated* that number of hours. The board had to draw the line somewhere." ·

In line with the foregoing it is contended by appellants that "The Industrial Welfare Commission had a wide discretion in classifying for their purpose. The lines in the present order were drawn about the type of work done by the women whose wages and hours were being regulated, rather than the character of the business of the employer. The beauty school falls squarely within the classification made for the purpose of regulation. The business of the beauty school is as we have pointed out, of a dual nature; it is selling instruction, but it is also purchasing and reselling the services of its students. Insofar as it is the latter, it is not a separate industry, but identical in character with all of the other establishments within the classification."

Appellants' brief also contains the following argument:

"We note that the total curriculum of a beauty school is 1600 hours. (Cosmetology Act, Business and Professions Code, Section 7394.) For the first 350 hours of that course, students may not operate upon the public at all. (Cosmetology Act, Business and Professions Code, Section 7400.)

"As plaintiffs allege in paragraph XIV of their complaint, the State Board of Cosmetology has required as a part of the curriculum for beauty schools that the student perform a certain number of practical operations, plaintiffs have attached to their complaint as Exhibit A a list of those operations. Plaintiffs nowhere allege the number of hours necessary to perform these required operations. ·

"For the first 350 hours of the course, the student cannot operate upon the public at all; for the last 350 hours of the course, she can operate on the public only if she is paid. (I.W.C. Order 2 N.S., sub. 4c.) But for 900 hours the student may be required to operate upon the public, and the school may charge the public and pay the student nothing

at all. It is a fact that the practical operations required by the Cosmetology Board can be easily completed within much less than 900 hours.

"There is, therefore, no necessity so far as the school curriculum is concerned, for requiring the student to operate upon the public after completion of 1250 hours of work."

"The relationship between the beauty school and the student is a dual one. Insofar as the school imparts and the student imbibes knowledge, the relationship is that of teacher and pupil. Insofar as the school purchases (in exchange for tuition) and markets to the public the services of the student, the relationship is that of employer and employee. The consideration moving to the student for her services is instruction and an opportunity to complete the 1600-hour curriculum required before taking the state examination. (A wage may be anything of value. *Schumann* v. *California Cotton Credit*, 105 Cal.App. 136 [286 P. 1068].) She could pay for this instruction in cash. Instead she pays for it in services. The school promptly markets the services to the public. It is impossible to say when the business of selling instruction to the student leaves off and the business of selling the student's services to the public commences."

A review of the record and, in particular, a consideration of the foregoing somewhat comprehensive quotations from the briefs, reveal appellants' position to be untenable; and the argument relied on to support appellants' contentions is unconvincing. Primarily, such argument is based on the assumption or decision of the Industrial Welfare Commission that "the relationship between the beauty school and the student is a dual one." Such assumption is unwarranted. The status of those attending a school operated by virtue of and under the Cosmetology Act is fixed by the act itself. And by the terms of the act those attending such schools are either students or they are not students; they are either employees or they are not employees, during the period of their attendance. There is nothing in the act to suggest the relationship of employer and employee. "The Legislature may, by appropriate legislation, provide for the establishment of a minimum wage for women and minors and may provide for the comfort, health, safety and general welfare of any and all employees." (Cal. Const., Art. XX, § 17½.) Manifestly, the foregoing provision of the Constitution contemplates the relationship of employer and employee and unless such rela-

tionship exists the Legislature is without power to legislate on the subjects referred to in said provision. ▮ And the Legislature has made no attempt to do so in the Cosmetology Act. Evidently the plan of education is approved by the Cosmetology Board, the only governmental agency that has any authority in the circumstances here presented. There is nothing in the plan that even suggests the relationship of employer and employee. ▮ The fact that "the school purchases (in exchange for tuition) and markets to the public, the services of the student," establishes no such relation.

▮ Although such a plan may not meet with the approval of the Industrial Welfare Commission, it must be assumed that it is approved by the Cosmetology Board; and any conflict in asserted authority between the two governmental agencies, in such circumstances, must be resolved in favor of the latter. Responsibility is imposed by statute upon the Cosmetology Board, hence, its powers, duties and prerogatives must be upheld. Moreover, there appears to be nothing inherently obnoxious in the scheme of operating the cosmetology schools. No hardship appears to result therefrom; indeed, so far as the student is concerned, it may be popular from the standpoint of economy. And it is not difficult to perceive that the Cosmetology Board, in its judgment, regards the opportunity to practice the art or trade upon the public under supervision, as a very necessary part of the course of instruction. ▮ In any event, as hereinbefore noted, the status of student and the absence of any relationship of employer and employee is determined by statute. To uphold appellants' contention would in effect modify the statute. This, neither the Industrial Welfare Commission nor the court has the power to do, either directly or indirectly. ▮ The training period has been set by statute at 1,600 hours, and it is not within the province of the Industrial Welfare Commission to decide that a student of cosmetology may complete such training in a shorter time.

The complaint in the action was sufficient.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.