Opinion
 

 DOSSEE, J.
 

 The Division of Labor Standards Enforcement (DLSE) appeals from a summary judgment entered in favor of UI Video Stores, Inc., doing business as Blockbuster Video (Blockbuster). The issues presented are whether the DLSE has the authority to negotiate checks made out to
 
 *1088
 
 employees for wages due from Blockbuster and whether settlement of an action against Blockbuster allowed it to retain the funds owed to employees that were not located. We determine that the trial court erred in entering judgment in favor of Blockbuster, in that the legal issues submitted to the court on undisputed facts must be resolved in favor of the DLSE, and reverse.
 

 Background
 

 “The Division of Labor Standards Enforcement ... is charged with enforcing Labor Code provisions (§1171 et seq.) and Industrial Welfare Commission (Commission) orders governing wage, hour, and working conditions of California employees. (§ 61.)”
 
 (Craib
 
 v.
 
 Bulmash
 
 (1989) 49 Cal.3d 475, 478 [261 Cal.Rptr. 686,
 
 111
 
 P.2d 1120], fn. omitted.) In July of 1992, as the result of an investigation, the DLSE filed a complaint against Blockbuster seeking reimbursement to approximately 1,914 employees for the cost of uniforms which Blockbuster had required the employees to furnish in violation of title 8, California Code of Regulations, section 11070, subdivision 9(A).
 
 [1]
 
 The complaint sought payment of $199,056 plus interest and costs. In December of 1993, Blockbuster entered into a settlement agreement to deliver to the DLSE checks in the amount of $38.51 made payable to each of the 1,914 employees and an additional check in the amount of $7,000, for a total of $80,708.14, between 14 and 21 days after execution of the agreement in complete settlement of the action. In addition, the agreement required Blockbuster to furnish a computer disk with the addresses of all employees entitled to payment.
 

 Rather than comply with the settlement agreement, Blockbuster mailed checks directly to the addresses of the employees. A large number of checks were returned as undeliverable.
 
 [2]
 
 When the DLSE requested counsel for Blockbuster to instruct its client to forward all returned checks to the DLSE for deposit in the unpaid wage fund (Lab. Code, § 96.6), counsel refused. Eventually, Blockbuster turned over the undeliverable checks but instructed its bank not to honor any of the returned checks. Blockbuster’s position was that it had fully complied with the settlement agreement by mailing the checks and that it intended to keep the funds represented by the undeliverable checks.
 

 On April 4,1995, the DLSE filed a second complaint against Blockbuster, this time alleging breach of the settlement agreement, breach of the covenant
 
 *1089
 
 of good faith and fair dealing, conversion, and for penalties for willful failure to pay wages.
 
 [3]
 
 On January 31, 1996, the DLSE filed a motion for summary judgment, arguing that the facts were undisputed and that the DLSE was entitled to judgment on its complaint.
 

 On February 23, 1996, Blockbuster filed a motion for summary judgment, arguing that its breach of the settlement agreement was “hypertechnical,” and that the DLSE did not suffer any damages. The key to this argument was Blockbuster’s contention that the DLSE had no authority to deposit the unclaimed checks in the unpaid wage fund since the checks were made out to employees. In the event the court found that the DLSE did have the authority to deposit checks in the unpaid wage fund, Blockbuster argued that the settlement agreement did not spell out the fact that Blockbuster could not keep the money owed to employees whose checks were returned.
 

 On March 25, 1996, the trial court issued an intended decision which stated that the DLSE’s motion for summary judgment was denied with the following reason. “The agreed payments for uniform expenses reimbursement constitutes neither wages or monetary benefits. See Labor Code section 96.7.” The court granted Blockbuster’s motion giving the same reason. At the hearing on the motions, counsel for the DLSE pointed out that Labor Code section 200 provided for a broad definition of “wages.”
 
 [4]
 
 In this context, DLSE counsel told the trial court that section 96.7 was irrelevant. The court stated that its tentative decision would stand, notwithstanding what it described as a “technical breach of a—one provision of the contract.” The trial court concluded that there was no damage caused to the DLSE and, in fact, found a benefit in that Blockbuster saved DLSE the cost of postage to mail the checks. Judgment was entered on April 9, 1996, and the DLSE appealed.
 

 On April 24, 1996, Blockbuster moved for an award of attorney fees and costs pursuant to the terms of the settlement agreement. On June 3,1996, the court granted the motion and awarded fees and costs in the amount of $22,469.37. Appellant also appealed from this order. By our order dated August 12, 1996, we consolidated the appeals for purposes of briefing, oral argument, and decision.
 

 
 *1090
 
 Discussion
 

 Standard of Review
 

 “Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. . . .” (Code Civ. Proc., § 437c, subd. (a).) “[A] moving defendant may rely on factually devoid discovery responses to shift the burden of proof pursuant to section 437c, subdivision (o)(2). Once the burden shifts as a result of the factually devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact.”
 
 (Union Bank
 
 v.
 
 Superior Court
 
 (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].) “On appeal, we independently assess the correctness of the trial court’s ruling, applying the same legal standard as the trial court. [Citations.] ‘ “[W]e construe the moving party’s affidavits strictly, construe the opponent’s affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.” [Citations.]’ ”
 
 (Van Dyke
 
 v.
 
 Dunker & Aced
 
 (1996) 46 Cal.App.4th 446, 451 [53 Cal.Rptr.2d 862].) “We conduct a de novo examination of the evidence and independently review the trial court’s determination of questions of law. [Citations.]”
 
 (Flowmaster, Inc.
 
 v.
 
 Superior Court
 
 (1993) 16 Cal.App.4th 1019, 1026 [20 Cal.Rptr.2d 666].)
 

 The Breach of Contract Claim
 

 There is no dispute as to the material facts underlying this action. Blockbuster argues that appellant has failed to show that it suffered any damages, which is an essential element of a breach of contract claim. Blockbuster claims that because appellant cannot negotiate the returned checks, it would be in the same position regardless of whether the checks were mailed to employees or delivered to appellant. Blockbuster cites a single section of the California Uniform Commercial Code in support of this contention: “The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.” (Cal. U. Com. Code, § 3110, subd. (a).) Declaring that its intent was to pay only those employees that could be located, Blockbuster concludes that appellant was not authorized to cash the checks. Alternatively, Blockbuster contends that even if the DLSE was authorized to deposit the checks, the settlement agreement did not give appellant the contractual right to retain the unclaimed
 
 *1091
 
 funds due the employees. Finally, Blockbuster argues that the settlement agreement was a third party beneficiary contract, and the employees suffered no harm because Blockbuster remains willing to pay any of the workers that are located.
 

 Benefits at Issue are “Wages”
 

 By its initial statement that the benefits at issue were not “wages,” the trial court apparently intended to negate any impact of section 96.7 on the issues of the instant case.
 
 [5]
 
 The purpose of section 96.7 is to empower the Labor Commissioner to investigate and prosecute actions and collect benefits without an assignment of the claim by the employee.
 
 (Millan
 
 v.
 
 Restaurant Enterprises Group, Inc.
 
 (1993) 14 Cal.App.4th 477, 487 [18 Cal.Rptr.2d 198]; § 96.7, subd. (a).) Section 200 provides that wages include: “all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.” The term “wages” has been held to include money as well as other value given, including room, board and clothes.
 
 (Schumann
 
 v.
 
 California Cotton Credit Corp.
 
 (1930) 105 Cal.App. 136, 140 [286 P. 1068].) “ ‘[T]he term “wages” should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.]’ ”
 
 (Ware
 
 v.
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc.
 
 (1972) 24 Cal.App.3d 35, 44 [100 Cal.Rptr. 791].) In
 
 United Air Lines, Inc.
 
 v.
 
 Industrial Welfare Com.
 
 (1963) 211 Cal.App.2d 729 [28 Cal.Rptr. 238], disapproved on another point in
 
 Industrial Welfare Com.
 
 v.
 
 Superior
 
 Court (1980) 27 Cal.3d 690, 728, footnote 15 [166 Cal.Rptr. 331, 613 P.2d 579], the court analyzed a similar Industrial Welfare Commission regulation, which stated: “ ‘No employee shall be required to contribute directly or indirectly from the wage for the purchase or maintenance of uniforms. . . .’” (211 Cal.App.2d at pp. 733-734.) The court noted that: “Although it is agreed that the regulation was not intended to be one concerning wages, actually it is. The real effect of the order is to increase the . . . employees’ wages by the amount which in the absence of the regulation they would have to pay
 
 *1092
 
 towards the cost of their uniforms.”
 
 {Id.
 
 at p. 746.) The court concluded that the primary effect of the regulation was on the compensation paid to employees.
 
 (Id.
 
 at p. 747.) Thus, despite the trial court’s original conclusion, the enforcement action undertaken by the DLSE in the underlying case concerned the collection of unpaid wages or benefits, as referenced in section 96.7.
 

 Authority to Deposit Checks Payable to Employees
 

 Blockbuster argues, even though it has contractually bound itself to deliver the checks to the DLSE, it cannot be forced to comply with its duty because the DLSE has no right to the checks. Although it did not challenge the state agency’s authority to bring the enforcement action and to compromise the claims of the employees, it now argues that the DLSE has no power to deposit the checks and, therefore, has suffered no damage from the breach of Blockbuster’s contract. Blockbuster has misconstrued the law. The California Uniform Commercial Code provides for the negotiation of an instrument by an authorized agent of the payee. Blockbuster’s citation to California Uniform Commercial Code section 3110, which provides rules for determining the identity of a payee, is not applicable to the question of whether a trustee or agent has authority to deposit the check. The identity of the payees of the checks was not an issue in this case.
 

 California Uniform Commercial Code section 1201, subdivision (35), defines a “ ‘[representative’ ” as an
 
 “agent... or any other person empowered to act for
 
 another.” (Italics added.) In determining the validity of an endorsement by an agent or representative, the issue “is whether [the agent] had the authority to indorse the . . . check in the name of [the principal].”
 
 (Fireman’s Fund Ins. Co.
 
 v.
 
 Security Pacific Nat. Bank
 
 (1978) 85 Cal.App.3d 797, 810 [149 Cal.Rptr. 883].) Under usual laws of agency, a representative with the authority to collect an instrument on behalf of the principal may validly endorse and deposit the instrument, and bind the principal in the same fashion as on a simple contract. (Cal. U. Com. Code, § 3402 [signature by representative]; see also 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 85, pp. 86-87 [agent with authority to collect money is authorized to endorse negotiable paper where necessary for performance of duties].)
 

 Section 96.7, in addition to empowering the Labor Commissioner to collect unpaid wages and benefits, also provides: “The Labor Commissioner shall act as trustee of all such collected unpaid wages or benefits, and shall
 
 *1093
 
 deposit such collected moneys in the Industrial Relations Unpaid Wage Fund.”
 
 [6]
 
 In other contexts, state officers are designated as trustees. For example, the Insurance Commissioner is “deemed to be a trustee for the benefit of all creditors and other persons interested in the estate of [an insolvent insurance carrier].” (Ins. Code, § 1057.) In considering a statutory grant of authority to the Insurance Commissioner to compromise and negotiate the settlement of claims against insolvent insurers, the court in
 
 In re Executive Life Ins. Co.
 
 (1995) 32 Cal.App.4th 344, 374-376 [38 Cal.Rptr.2d 453], concluded that the commissioner acted “not only as a trustee but also as a servant of the state in the exercise of its police power."
 
 {Id.
 
 at p. 376.) The statute considered in
 
 Executive Life
 
 is similar to section 96.7, in that it requires a state officer to serve as trustee to collect or compromise claims for designated citizens. The language of section 96.7 authorizes the Labor Commissioner to take whatever actions are required to collect and deposit unpaid wages. A holding that the DLSE could compromise a worker’s claim, but could not enforce the compromise, would be contrary to the policy of the state to “vigorously enforce minimum labor standards.” (§ 90.5) As an agency of the state and the statutorily authorized trustee for the employees of Blockbuster, the commissioner has the power to negotiate the checks on behalf of the employees.
 

 Blockbuster’s refusal to deliver the checks has resulted in damages (in the amount of the unpaid checks) to the agency in its capacity as an agent of the state and as trustee for the employees.
 

 
 *1094
 

 Contractual Right to Retain Unpaid Checks
 

 Blockbuster argues, in the alternative, that even if the DLSE has the ability to deposit the checks, the settlement agreement does not authorize it to keep funds due to employees who cannot be located. It cites no authority for this contention and apparently concludes that the absence of contractual language on this point justifies Blockbuster’s retention of the unpaid benefits. “Generally speaking, ‘[T]he rules of interpretation of written contracts are for the purpose of ascertaining the meaning of the
 
 words used
 
 therein; evidence cannot be admitted to show intention independent of the instrument. [Citations.]”’
 
 (Stevenson
 
 v.
 
 Oceanic Bank
 
 (1990) 223 Cal.App.3d 306, 316 [272 Cal.Rptr. 757].) However, the circumstances surrounding the execution of the contract may be considered in determining the meaning of the language used therein. (Code Civ. Proc., § 1860.) In addition, “[a]ll applicable laws and ordinances in existence when the agreement is made become a part thereof as fully as if incorporated by reference.” (1 Witkin, Summary of Cal. Law,
 
 supra,
 
 Contracts, § 692, p. 625.) When the previous canons of construction fail to resolve the uncertainty, the contract is construed against the party causing the ambiguity.
 
 (Pacific Gas & Electric Co.
 
 v.
 
 Superior Court
 
 (1993) 15 Cal.App.4th 576, 596 [19 Cal.Rptr.2d 295], disapproved on other grounds in
 
 Advanced Micro Devices, Inc.
 
 v.
 
 Intel Corp.
 
 (1994) 9 Cal.4th 362, 376-377 [36 Cal.Rptr.2d 581, 885 P.2d 994].)
 

 In viewing the circumstances surrounding execution of the instant agreement, we note that it represents the settlement of an action for violations of Wage Order No. 7-80 involving a claim of $199,056 in unpaid employee benefits. That action was maintained by the DLSE in its capacity as statutory trustee for the employees. We read the existing law into the contract, which provides that the DLSE “shall” act as trustee and “shall deposit” money owed to the employees in the unpaid wage fund. When Blockbuster agreed to settle the action for approximately $80,000, without any provision for recouping a part of that amount, it must be assumed that the normal statutory procedure was contemplated regarding any unclaimed payments.
 
 [7]
 
 This conclusion is particularly compelling in light of the fact that Blockbuster’s counsel, who apparently drafted the agreement, did not include any language to negate the operation of the statute.
 

 The words of the instant contract require delivery of the checks and addresses. Placing the burden on Blockbuster to do the bookkeeping work of
 
 *1095
 
 writing the checks and delivering them to the enforcing agency does not indicate an intent to allow Blockbuster to retain the nearly $19,000 due to employees that Blockbuster could not locate. The contract does not state that Blockbuster need only pay employees that it can locate. Blockbuster does not dispute the fact that it breached this provision of the contract by refusing to deliver the original and the returned checks until after it instructed its bank not to honor the checks. There is no provision in the settlement agreement that allows Blockbuster to retain a part of the amount for which it has agreed to settle the original action. We reject Blockbuster’s argument that it was appellant’s responsibility to insist on additional contractual language regarding disposition of undeliverable checks. The provisions of the Labor Code fill in the necessary provisions in the absence of express direction.
 

 Third Party Beneficiary Contract Theory
 

 Blockbuster’s final contractual argument is that the settlement agreement is a third party beneficiary contract, and the employee-beneficiaries of the contract have not been harmed by Blockbuster’s breach. Apparently, Blockbuster is arguing that placing checks in the mail satisfied any obligation to its employees who were required to buy their own uniforms. No authority is cited for this proposition for the obvious reason that an obligation for money owed is not extinguished by mailing a check and thereafter retaining the unclaimed proceeds. Even if we determined that the settlement agreement was a third party beneficiary contract, there is no support for the assertion that the beneficiaries suffered no damage from Blockbuster’s failure to pay. There was no language in the settlement agreement that allowed Blockbuster to make direct payment at all. The agreement does not allow a mere attempt at payment to be construed as sufficient performance of Blockbuster’s obligations. Blockbuster has failed to provide any support for its contention that it should be allowed to withhold the amounts owed under the terms of the settlement agreement.
 
 [8]
 
 It was error to grant summary judgment on the contractual cause of action.
 

 Cause of Action for Conversion
 

 The DLSE’s second cause of action alleged that the DLSE had the right to immediate possession of the checks and that Blockbuster unlawfully converted the checks to its own use. (See, e.g.,
 
 Edwards
 
 v.
 
 Jenkins
 
 (1932) 214
 
 *1096
 
 Cal. 713 [7 P.2d 702] [brokerage house that had contractual duty to deliver shares of stock to plaintiff, but sent them instead to office of corporation, is liable for breach of contract and conversion].) Blockbuster argues that the DLSE has no right to exercise dominion and control of the checks, that Blockbuster is willing to issue a new check if a missing employee is located, and that appellant suffered no damages because it has no right to deposit the checks.
 

 The issues of the DLSE’s authority and Blockbuster’s theory of lack of damages have been resolved by our discussion of the DLSE’s statutory and contractual authority to collect wages on behalf of the employees absent an actual assignment. Furthermore, the DLSE need not possess legal title to the property at issue to support a cause of action for conversion. A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the property. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 618, p. 713.) The DLSE, which is empowered by section 96.7 to collect and deposit unpaid benefits, has such an interest. It was error to grant summary judgment on this cause of action.
 

 Liability for Penalty Wages
 

 The final cause of action of the DLSE’s complaint was for penalty wages pursuant to section 203. Section 203 provides for payment of a penalty when wages earned and unpaid when the employee is discharged or quits are not paid immediately. The penalty assessed on an employer who “willfully fails to pay” is that the “wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days.” (§ 203.) Section 203 applies to a willful failure to promptly pay an employee who is discharged or quits. The instant action does not involve a failure to pay at the time of discharge, and to the extent the previous action did, any such penalty was subsumed within the terms of the settlement agreement. That agreement provided that the amounts paid were the entire consideration under the agreement, and that the parties would not seek further compensation in connection with the matters encompassed in the original action. By its terms, section 203 does not apply to a failure to pay pursuant to the terms of a settlement agreement, and the agreement did not impose a penalty for late payment.
 

 Attorney Fees and Costs
 

 Because it is based on the judgment favoring Blockbuster, the award of attorney fees and costs to Blockbuster must be reversed along with the
 
 *1097
 
 judgment. Upon entry of the judgment by the trial court, appellant shall be entitled to its attorney fees and costs.
 

 Appellant requests this court to order the trial court to enter summary judgment in appellant’s favor. The trial court had apparently ordered appellant to move for summary judgment on the issue of Blockbuster’s liability, with damages to be determined in a later accounting proceeding. Although we have determined that Blockbuster is liable to appellant, Code of Civil Procedure section 437c makes no provision for a partial summary judgment as to liability. Even summary adjudication may be granted only in limited instances. (Code Civ. Proc., § 437c, subd. (f)(1).) Because issues of the calculation of damages apparently remain to be determined, it is not appropriate to grant summary judgment for appellant at this time. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1996) 110:40.1, p. 10-17 [summary judgment or adjudication improper where amount of damages raises factual issue].) The correct procedure below would have been a motion to bifurcate the issue of liability, which the parties could have tried upon the undisputed facts. (Code Civ. Proc., § 598.) A decision on the issue of liability against the party on whom liability is sought to be imposed does not result in a judgment until the issue of damages is resolved.
 

 Conclusion
 

 The order awarding attorney fees and costs, and the summary judgment in favor of Blockbuster are reversed. The matter is remanded for further proceedings in accordance with the opinion expressed herein. Appellant is entitled to costs on appeal.
 

 Stein, Acting P. J., and Swager, J., concurred.
 

 [1]
 

 Title 8, California Code of Regulations, section 11070, subdivision 9(A) states, in relevant part: “When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer.”
 

 [2]
 

 According to a list mailed to the DLSE in June of 1994, the total of the returned checks was $18,715.86.
 

 [3]
 

 Appellant subsequently abandoned the cause of action for breach of the covenant of good faith.
 

 [4]
 

 Unless otherwise indicated, all statutory references are to the Labor Code.
 

 [5]
 

 Blockbuster argues that a discussion with the trial judge regarding section 96.7 amounted to a waiver of any issue as to the applicability of the statute on appeal. The relevant discussion pertained to the DLSE’s argument that loss of the agency’s ability to properly enforce the law could constitute contract damages. In that context, counsel stated that section 96.7 was irrelevant to a breach of contract claim. We will not deem this comment to be a waiver of the effect of the statute on the issues herein. The application of a statute is purely an issue of law, which we may review despite a failure to properly raise the issue below.
 
 CPanopulos
 
 v.
 
 Maderis
 
 (1956) 47 Cal.2d 337, 341 [303 P.2d 738] [where facts undisputed, new contention may be considered on appeal as matter of law].)
 

 [6]
 

 The full text of section 96.7 provides: “The Labor Commissioner, after investigation and upon determination that wages or monetary benefits are due and unpaid to any worker in the State of California, may collect such wages or benefits on behalf of the worker without assignment of such wages or benefits to the commissioner. [U (a) The Labor Commissioner shall act as trustee of all such collected unpaid wages or benefits, and shall deposit such collected moneys in the Industrial Relations Unpaid Wage Fund. [^D (b) The Labor Commissioner shall make a diligent search to locate any worker for whom the Labor Commissioner has collected unpaid wages or benefits. [<]Q (c) All wages or benefits collected under this section shall be remitted to the worker, his lawful representative, or to any trust or custodial fund established under a plan to provide health and welfare, pension, vacation, retirement, or similar benefits from the Industrial Relations Unpaid Wage Fund. [IQ (d) Any unpaid wages or benefits collected by the Labor Commissioner pursuant to this section shall be retained in the Industrial Relations Unpaid Wage Fund until remitted pursuant to subdivision (c), or until deposited in the General Fund pursuant to subdivision (e). [<H] (e) Whenever the balance in the Industrial Relations Unpaid Wage Fund is in excess of two hundred thousand dollars ($200,000), the Labor Commissioner shall transmit this excess amount to the Controller for deposit in the General Fund. [qQ (f) All wages or benefits collected under this section which cannot be remitted from the Industrial Relations Unpaid Wage Fund pursuant to subdivision (c) because money has been transmitted to the General Fund pursuant to subdivision (e) shall be paid out of the General Fund from funds appropriated for that purpose.”
 

 [7]
 

 This construction of the contract would require Blockbuster to furnish substitute checks in the event that the DLSE is unable to deposit the checks referenced in the agreement.
 

 [8]
 

 Appellant argues that the settlement agreement expressly provides for specific performance of the agreement. We will not address that claim, since neither the complaint nor appellant’s motion for summary judgment mentioned specific performance.